**Juanita McCLURE, Plaintiff,**

v.

**The FIRST NATIONAL BANK OF LUBBOCK, TEXAS, et al., Defendants.**

**Civ. A. No. 5–1018.**

United States District Court, N. D. Texas, Lubbock Division.

Jan. 11, 1973.

---

Harold D. Hammett, Simon & Simon, Fort Worth, Tex., for plaintiff.

James H. Milam, Crenshaw, Dupree & Milam, Lubbock, Tex., for The First National Bank of Lubbock.

Michael R. Waller, Childs, Fortenbach, Beck & Guyton, Houston, Tex., for Sterling Emens, Jr.

Daniel H. Benson & Thomas J. Griffith, Griffith, Brister & Benson, Lubbock, Tex., for Adolph R. Hanslik and Gaines County Developments.

## MEMORANDUM AND ORDER

WOODWARD, District Judge.

The instant case is before the Court on motion of defendants to dismiss for failure to state a cause of action. The complaint against defendant Adolph R. Hanslik has heretofore been dismissed for the reason that said defendant was previously discharged in bankruptcy.

Plaintiff alleges jurisdiction under 15 U.S.C. §§ 78a–78u, being a portion of the Securities Exchange Act of 1934. All parties are Texas residents.

For purposes of this motion to dismiss, the Court must of course accept all of plaintiff's allegations as true in determining whether any of the facts alleged could conceivably constitute a cause of action under the Securities Exchange Act of 1934. The Court will limit its consideration of the motion to dismiss to the question of whether the transactions alleged in the complaint constitute a "purchase or sale of any security" within the meaning of 15 U.S.C. § 78j(b).

In general, the Court is here presented with the question of whether the execution of promissory notes, and the fraudulent misapplication of funds obtained thereby, is or can be actionable under the Securities and Exchange Act of 1934. In the instant case, the transactions are actionable under such Act only if those transactions constitute the "purchase or sale of any security."

In alleging defendants' liability under the Act, plaintiff complains in summary as follows: As part of a property settlement agreement pursuant to divorce, plaintiff and defendant (formerly husband and wife) each retained ownership of one-half of the common stock of Gaines County Developments (GCD), a Texas corporation. Defendant Adolph Hanslik was at all material times general manager, or directed the affairs, of GCD without consultation with plaintiff.

On or about August 15, 1964, defendant Hanslik represented to plaintiff that GCD needed to borrow $200,000 from defendant First National Bank of Lubbock (the Bank) in order to pay said corporation's business debts, a substantial portion of which such defendants alleged were owed by GCD to the Bank. Defendant Sterling Emens, Jr., was then and until approximately August 31, 1967, a vice-president and loan officer of the Bank. Emens also represented to plaintiff that the $200,000 loan was needed for GCD's business debts.

Plaintiff, relying upon defendants' representations, executed a promissory note as secretary of GCD; defendant

Hanslik also executed such note as president, dated on or about August 15, 1964, payable to the order of the Bank. GCD, purportedly acting through plaintiff and defendant Hanslik, also executed and delivered to A. D. Justice, trustee for the benefit of the Bank, a deed of trust to secure payment of the note. This deed of trust mortgaged to the Bank a parcel of land constituting of substantially all the assets of GCD. This transaction was consummated on or about September 4, 1964, by the deposit of $200,000 in the GCD account at the Bank pursuant to the note payable on or before August 13, 1965.

Plaintiff further alleges that through fraud and conspiracy between and among defendants, the $200,000 was never intended to be, and was never, applied to the debts of GCD. Rather, said funds were applied, with the full knowledge of defendants, to payment of a pre-existing unsecured debt owed by defendant Hanslik to the Bank. Said unsecured debt had been incurred by defendant Hanslik on or about August 3, 1964, at a time when defendant Hanslik already owed the Bank approximately $700,675.

On the same date that the $200,000 loan to GCD was deposited in GCD's account at the Bank, defendants used this $200,000 to pay off the pre-existing $200,000 unsecured indebtedness which defendant Hanslik had incurred on or about August 3, 1964. Then defendant Hanslik, under date of September 3, 1964, and unknown to plaintiff, executed a personal promissory note in the amount of $200,000 payable to the order of GCD.

On or about April 4, 1967, plaintiff executed a purported separate collateral agreement pledging to the Bank a portion of her stock in GCD and in Gaines Farm and Ranch Corporation for the purpose of securing a new note for $202,300.16 renewing and extending the original note of $200,000 made by GCD. A new deed of trust was executed pursuant to this collateral agreement. On or about September 3, 1968, after the

Bank had instituted foreclosure proceedings, trustee A. D. Justice purportedly sold all the Gaines County property of GCD to the Bank for $125,000.

Plaintiff contends that the notes, deeds of trust, and other instruments and agreements above referred to are securities and that each defendant, by the use of means or instrumentalities of interstate commerce or of the mails, employed or used manipulative or deceptive devices in connection with the purchase or sale of such securities. Said acts of defendants are allegedly in violation of Section 10(b) of the Securities and Exchange Act of 1934 (the Act), 15 U.S.C. § 78j(b), and of Rule 10b–5, 17 C.F.R. § 240.10b–5, adopted pursuant thereto. Plaintiff alleges actual monetary damages and claims exemplary damages as a result of such transactions.

The Court must first determine whether the notes or other instruments above described constitute "securities" within the meaning of the Act. The Act provides in 15 U.S.C. § 78c(a)(10) that unless the context otherwise requires, "The term 'security' means any note . . . but shall not include . . . any note . . . which has a maturity at the time of issuance of not exceeding nine months . . . ." The courts have not given this section an absolutely literal interpretation, for to do so would be to place under the coverage of the Act many day-to-day loan transactions unrelated to the fraud-related abuses which Congress in 1934 was attempting to correct and regulate. Beury v. Beury, 127 F.Supp. 786, 789 (S.D.W. Va.1954). Nevertheless, most federal courts including the Fifth Circuit Court of Appeals have construed the statute broadly enough so that "*almost* all notes are held to be securities" (emphasis added). Lehigh Valley Trust Co. v. Central National Bank of Jacksonville, 409 F.2d 989, 992 (5th Cir. 1969).

The obvious logical deduction from such statement is that there are some notes which do not constitute "securities" under the Act. Accordingly, the court in Joseph v. Norman's Health

Club, Inc., 336 F.Supp. 307, 313 (E.D. Mo.1971), held that certain promissory notes were not securities. In *Joseph*, plaintiffs purchased lifetime memberships in defendant health club and gave promissory notes in payment for said memberships. The court held that the context of the transactions placed them outside the purview of the Act, since the statute defines a note as a security "unless the context otherwise requires."

The *Joseph* court relied heavily upon City National Bank of Fort Smith, Arkansas v. Vanderboom, 422 F.2d 221 (8th Cir. 1970). There, as in the instant case, fraud was charged against a bank for alleged misrepresentations to the makers of certain notes. The court held that the bank did not sell or offer to sell any security of any kind to the "investors" but merely loaned them some money with which to purchase stock. In determining the scope of the "in connection with the purchase or sale of any security" clause, the court explained that

It is apparent that the extent of the coverage and liability imposed under Section 10(b) of the Securities and Exchange Act and Rule 10b–5 has not as yet been defined . . . . [T]he statutory section and the rule constitute one of several broad anti-fraud provisions set forth in the securities law in which application of the 'allegedly proscribed conduct must have been "in connection with the purchase or sale of any security." *The relevant definitional sections of the 1934 Act are for the most part unhelpful* \* \* \*. Consequently, we must ask whether respondents' alleged conduct is of the type of fraudulent behavior which was meant to be forbidden by the statute and the rule.' [SEC v. National Securities, Inc., 393 U.S. 453, 466–467, 89 S.Ct. 564, 21 L. Ed.2d 668 (1969)] (emphasis added)

City National Bank of Fort Smith, Arkansas v. Vanderboom, 422 F.2d at 229. Other portions of the *Vanderboom* opinion have been cited with approval by the Fifth Circuit Court of Appeals in Clem-

ent A. Evans & Co. v. McAlpine, 434 F. 2d 100, 103 (5th Cir. 1970).

A similarly helpful discussion of the "security" definition in the statute was undertaken by the United States Supreme Court, which found liability under the Act in SEC v. C. M. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943):

However well [some rules of statutory construction] may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with *its dominating general purpose*, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out *in particular cases* the generally expressed legislative policy. (emphasis added)

*Id.* 320 U.S. at 350–351. Significantly, the Court states that the term "security" is defined in the Act "to include by name or description many documents in which there is *common trading for speculation or investment*" (emphasis added). *Id.* at 351. This Court agrees that the Act was designed primarily and almost exclusively to curb abuses involved in "trading for speculation or investment." Thus the Act is designed to deal with substance over form and to regulate and prohibit fraud involved in the sale of promissory notes where such notes are sold or traded for purposes of speculation or investment in the same way that stock, bonds, or debentures might be traded, sold, or exchanged. Such an interpretation of the "any note" provision of the statute is consistent with the "dominating general purpose" of the Act and specifically of 15 U.S.C. § 78j (b).

This Court holds, however, that the definition of "security" in the Act is not intended to include any of the instruments or transactions pertinent to the present case. Rather, this Court holds that the transactions involved amount to little more than ordinary

commercial loans not intended to be covered by the Act. These transactions are totally unrelated to the abuses involving "trading for speculation or investment," which abuses Congress in 1934 sought to eliminate.

It is significant that Congress has in effect found, by the passage of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., that the Securities Exchange Act of 1934 is inapplicable to consumer loans and, by strong implication, to commercial loans as well. Congress apparently felt it necessary to curb abuses in consumer loans by the passage of a new statute, thus implying that such abuses could not be reached by the Securities Exchange Act of 1934. And in 15 U.S.C. § 1603, a section within the Truth in Lending Act, Congress in setting forth transactions *outside* the purview of the Truth in Lending Act lists "credit transactions . . . for business or commercial purposes" and "transactions in securities" as *two different types of transactions*. Thus it is clear that most, if not all, ordinary commercial loans are not "securities" as defined by Congress as recently as 1968. Should Congress wish to place such commercial loans under federal regulation, it need only enact a statute similar in form to the Truth in Lending Act. It is not within the proper province of this Court to extend the scope of the Securities Exchange Act of 1934 beyond the point where Congress has chosen to act.

The transactions alleged by plaintiff are therefore matters of internal corporate management, are simple private loan transactions, and do not involve a subterfuge for stock transactions where adherence to substance over form would demand coverage by the Act. Rather, the actions complained of are actionable, if at all, under state laws regarding fraud or violations of corporate fiduciary obligations. The Court intimates no opinion as to such possible liability outside the Act.

■ Thus these particular notes and transactions are not "securities" within the meaning of the Act. But even if these instruments complained of are securities, the transactions complained of must constitute the "purchase or sale" of such securities in order for liability to exist under the Act and in order for this Court to have jurisdiction over the present complaint. The Court holds that these transactions do not constitute the "purchase or sale" of securities and that for this additional reason plaintiff has not a cause of action under federal law.

Plaintiff cites Rekant v. Desser, 425 F.2d 872 (5th Cir. 1970), in support of its positions including its contention that the issuance of a note by a corporation to an officer or stockholder constitutes the sale of a security. On their face, the facts in *Rekant* are somewhat similar or analogous to those in the instant case. *Rekant* is an action by a minor stockholder against the president, a director of the corporation. Defendant owned a parcel of land which he made available as collateral to secure an indebtedness incurred by the corporation. Subsequently defendant sold that property to the corporation and received instead of cash an unsecured note issued by the corporation. Plaintiff alleged that the land was worth much less than the face amount of the loan. Plaintiff also complained that the note was repeatedly reduced whenever the corporation received substantial cash, thus causing a continuing operating loss and shortage of working capital. The court held that jurisdiction existed under the Act.

The courts have failed to draw a clearly discernible line of demarcation in limiting or defining the scope of section 78j(b). The factual differences between the circumstances in *Rekant* and those in the present case provide a convenient and necessary opportunity to draw a distinction between transactions which are prohibited by the Act and those which are not. The key to this distinction lies in the laudable observation by the *Rekant* court that "That World-Wide may have chosen to pay for the land by the issuance of its note as opposed to the issuance of some other form of security

should have no bearing on the coverage of [Rule 10b–5]." 425 F.2d at 878. Thus where the transaction complained of is one where the issuance of a note rather than of shares of stock is merely a technical difference in form, since defendant in exchange for the land could have taken an instrument more usually thought of as a security (such as additional shares of stock), there is jurisdiction under the Act.

■ Thus the major purpose of the section and rule is to protect the investor, who is a purchaser of a security, from fraud and misrepresentation. This purpose is properly recognized by the *Rekant* court:

> As used in the Exchange Act, the term 'security' 'embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits'. Tcherepnin v. Knight, 1967, 389 U.S. 332, 338, 88 S.Ct. 548, 554, 19 L. Ed.2d 564, 570 . . . .

The defendant in *Rekant* fit this description precisely since he represented to his stockholders that he was giving the corporation valuable land which it could subdivide and from which it could reap great profit.

The present fact situation is not one into which a sale of stock could be so easily inserted in place of the transactions alleged. The initial note executed by plaintiff and defendant Hanslik did not constitute an investment by the Bank and was by no means a subterfuge for a stock transaction. Rather, the initial $200,000 note secured by the deed of trust was used largely to pay off other unsecured indebtedness to the Bank. The transaction was an ordinary commercial loan essentially unlike a stock investment. Surely plaintiff would not contend that the Bank would have or could have invested in GCD by giving $200,000 in exchange for stock of GCD or that the note transaction was merely a subterfuge for a stock transaction, a

"[scheme] devised by those who seek the use of the money of others on the promise of profits." 389 U.S. at 338. This is not necessarily to say that plaintiff was not defrauded or cheated in the execution of the note, but merely that the transaction does not point to liability under the Act consistent with Congressional intent.

Likewise, the other transactions complained of by plaintiff fall on that side of the line of demarcation which constitutes the category of ordinary commercial loan transactions unrelated to securities regulation. The deed of trust served merely as collateral for the ordinary commercial bank loan and does not amount to the "sale" of any property or security. The application of the proceeds of the $200,000 loan to the individual indebtedness of defendant Hanslik may have deprived the corporation of property to which it was legally entitled but was at most an act of fraud and a breach of defendant Hanslik's fiduciary duty, not the sale of a security actionable under the Act. The note for $200,000 given by defendant Hanslik to the corporation was likewise an ordinary loan, not analogous to an investment or stock transaction. This note was the *quid pro quo* for the $200,000 proceeds received by Hanslik from the corporation and applied to his separate debts. If the initial note endorsed by plaintiff did not constitute the sale of a security, neither could the separate collateral agreement of April 4, 1967, which merely renewed and extended the original note, be actionable under the Act. And finally, the foreclosure proceedings were ordinary commercial proceedings pursuant to the loan collateral agreement and are not transactions covered by the Act.

In *Rekant*, defendant used an allegedly fraudulent device—a note in an excessive amount—in causing or inducing a corporation to invest in a parcel of land. The transactions involved were not commercial loans in any ordinary sense. The fact that defendant received a note rather than stock or some other instrument more widely recognized as a secu-

rity should not and does not relieve him of liability under the Act. Defendant Hanslik in the present case, however, contrived no substitute or formal equivalent to a stock or investment transaction. He merely induced a person with whom he shared half ownership in a closely-held corporation, the sole substantial asset of which was a parcel of land, to execute various notes and accompanying instruments as part of an ordinary commercial loan arrangement. Clearly Congress in 1934 did not intend such a scheme or arrangement to be actionable under the Act, which is designed primarily to protect public and private investors in the sale of stock and other securities.

This Court concurs with the district court in *Rekant* which asserted that "the plaintiff does not have a cause of action under Rule 10(b)(5) in that internal corporate matters or mishandling of corporate transactions is not within the purview of this Rule" (quoted in 425 F. 2d at 876). The Court of Appeals does not reject this sound contention but instead properly bases its decision upon other grounds.

This Court is aware that the issuance of its own stock by a corporation constitutes the "sale" of that stock and hence the sale of a security under section 78j(b). Hooper v. Mountain States Securities Corporation, 282 F.2d 195 (5th Cir. 1960); Movielab, Inc. v. Berkey Photo, Inc., 452 F.2d 662 (2d Cir. 1971). By this same reasoning, the issuance of a note which is the formal equivalent of the issuance of shares of stock would be covered by the Act. SEC v. Vanco, Inc., 166 F.Supp. 422 (D.N.J. 1958), aff'd, 283 F.2d 304 (3d Cir. 1960). This Court rejects the proposition, however, that the issuance of a note in an ordinary commercial loan transaction constitutes the "sale" of such note according to the intent of Congress under the Act.

In *Movielab, supra,* plaintiff corporation issued notes to defendant corporation (both corporations being publicly held) for $10,500,000, payable over a period of 20 years, in exchange for the assets of defendant corporation. Reading the Act "flexibly, not technically and restrictively," 452 F.2d at 663, the court held that it had jurisdiction under the Act. However, *Movielab* is clearly distinguishable from the instant fact situation in that the *Movielab* transaction was the formal equivalent of the common merger acquisition whereby Corporation A purchases the assets of Corporation B and issues its own stock in payment. In *Movielab,* Corporation A merely issued a note in place of its stock. The *Movielab* court refused to rule that in a different context the issuance of a corporate note would not be outside the coverage of the Act:

[A]ppellants strenuously urge that claims of fraud in connection with the issuance of notes in every *private loan transaction* cannot be within the scope of [the Act]. Otherwise, they say, federal jurisdiction could be invoked in connection with the issuance of any check or note no matter how small the transaction so long as some instrumentality of interstate commerce was used. *We do not deal with that hypothetical situation.* (emphasis added)

452 F.2d at 663. The court adds that the Act states that " 'The term "security" means any note . . .' and therefore includes *some* notes at the very least." *Id.* at 663. Further, the trial court in *Movielab* supported its position by stating that "it must be conceded that notes of the type issued here are frequently discounted, purchased for investment, hypothecated, or otherwise made the subject of dealings in the market place." 321 F.Supp. 806, 809. Clearly the notes involved in the instant case are not notes of such a type that would be traded on the open market.

The trial court in *Movielab* dismisses unpersuasively the opinion in SEC v. Fifth Avenue Coach Lines, 289 F.Supp. 3 (S.D.N.Y.1968), aff'd, 435 F.2d 510 (2d Cir. 1970), on the basis that *Fifth Avenue* involved a "personal loan" rather than a "note." This Court finds such a distinction totally inapplicable and ir-

relevant. The facts in *Fifth Avenue* are in many ways very similar to those in the present case. The transactions complained of involved numerous loans involving excessive charges and fraudulent diversions of funds. The court found that

. . . there was a note from Gray Line to Morrill. But Krock and Muscat did not 'sell' this note to Fifth, nor did Fifth 'purchase' it, in any normal sense of those words. The loan went to Gray Line because it was Gray Line which was indebted to Hertz. Gray Line did not have any money. Fifth eventually did. Hence, Krock and Muscat caused Fifth to pay Gray Line's loan, plus a premium of $107,000 in the bargain. *This is overreaching on an individual loan transaction, but it is not fraud in the purchase or sale of securities* within the meaning of the two Acts. (emphasis added)

289 F.Supp. at 38. *Accord*, Gordon v. Lipoff, 320 F.Supp. 905, 913 (W.D.Mo. 1970).

An excellent example of a case where a promissory note transaction should be and is covered by the Act is SEC v. Addison, 194 F.Supp. 709 (N.D.Tex.1961). There, "defendants needed money to get into operation and . . . in order to finance such operations, they were soliciting unconditional unsecured loans of money from members of the general public." *Id.* at 715. Such defrauding of public investors is precisely within the purview of the Act. No such situation is present in the instant case.

Plaintiff cites United States v. Austin, 462 F.2d 724 (10th Cir. 1972), in support of its position. This case is not persuasive, however, in the present context, since *Austin* deals with a letter of commitment which was sold by defendant. The court does not deal directly with the question of whether an ordinary commercial loan is covered by the Act.

Plaintiff likewise relies on Sanders v. John Nuveen & Co., 463 F.2d 1075 (7th Cir. 1972). However, the court emphasizes the fact that the commercial paper involved in *Sanders* "was therefore obviously offered and sold to the general public; indeed, it was characterized in the issuer's financial statements as 'short term open market' paper." *Id.* at 1079. The *Sanders* court suggests indirectly that *all* notes having a maturity of more than nine months can be reached by the Act. With such reasoning this Court disagrees. *Sanders* does provide, however, a useful and cogent distinction between two different kinds of notes: commercial (not covered by the Act, in the view of this Court) and investment (covered by the Act). The former is created "when a prospective borrower approaches a bank for a loan and gives his note in consideration for it." The latter is created when a person "seeks to invest his money and receives a note in return for it." *Id.* at 1080. This Court holds that all notes in the latter category, regardless of maturity, are under the Act and that no notes in the former category having a maturity not exceeding nine months are under the Act. The instant case involves notes in the former category with maturity *greater* than nine months. In such a circumstance, this Court holds that jurisdiction under the Act must be determined by looking at the particular instruments involved in light of Congressional intent. After doing so, this Court concludes that the instant case must be dismissed.

Finally, the Court is aware of Superintendent of Insurance of New York v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), finding jurisdiction under the Act in the case of a sale of bonds. But the Court explicitly refused to determine whether transactions involving misuse of certificates of deposit could be reached by the Act. 404 U.S. at 13 n. 10. And the Court emphasized that "We agree that Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement." *Id.* at 12.

Since the present case involves no more than ordinary and conventional commercial notes and accompanying documents, and since the complaint alleges in effect no more than corporate mismanagement, this Court concludes that the acts and omissions complained of, however fraudulent or otherwise actionable, do not confer jurisdiction upon this Court under the Securities and Exchange Act of 1934. Accordingly, the Court will enter an order of even date herewith dismissing the present cause of action for lack of jurisdiction, with prejudice as to said Act but without prejudice as to any future complaints based upon alternate theories of law upon which this Court passes no judgment.