**AVENUE STATE BANK, Plaintiff,**

v.

**Joseph L. TOURTELOT et al., Defendants.**

**No. 74 C 259.**

United States District Court, N. D. Illinois, E. D.

May 3, 1974.

Justin A. Stanley, Patrick W. O'Brien and Henry F. Field, Mayer, Brown & Platt, Chicago, Ill., for plaintiff.

Randall L. Mitchell and Nancy S. Whitten of Chapman and Cutler, Charles R. Kaufman, Victor Lewis and Allan E. Lapidus of Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

### Motion to Dismiss

#### I.

As the result of a meeting on April 14, 1973, plaintiff Avenue State Bank loaned defendant Travel Management Corporation $220,000, in exchange for the execution of a series of short-term notes (later consolidated) as evidence of the indebtedness, and the execution of certain security agreements. In attendance at the meeting were Carl Oberwortmann, President of the Bank; defendant Zimmerman, President and major stockholder of Travel Management; and defendant Tourtelot, director, creditor, and shareholder of Travel Management, as well as a director of the Oak Park Trust and Savings Bank, plaintiff's principal competitor in Oak Park, Illinois. The loan was needed immediately to pay off debts owing to the Air Traffic Conference, one of the suppliers of air transportation of Travel Management.

Plaintiff alleges that it agreed to loan the cash upon the false and fraudulent misrepresentations of defendants Tourtelot and Zimmerman that Travel had, as security, over one-half million dollars worth of accounts receivable which were clear of any prior liens, and were "solid" in that Travel had "paid out 90%" of the travel arrangements due with respect to them. Plaintiff alleges that, in fact, the accounts receivable were bogus, and that all of the assets of Travel were clouded by an asserted prior lien. Travel is insolvent, and none of the $220,000 indebtedness has been repaid.

Avenue is suing defendants in seven counts under Sections 12(2)[1] and 17(a)[2] of the Securities Act of 1933, as well as under the Illinois Securities Act and the common law.

Defendants contend that this ordinary commercial bank loan transaction does not constitute the "sale"[3] of a "security" within the Securities Act of 1933, and in particular, is not within the purview of the jurisdictional sections, 15 U.S.C. §§ 77b(1) and 77b(3). Defendants move to dismiss the action for lack of subject matter jurisdiction. We agree with defendants' contentions and grant the motion to dismiss.

## II.

As noted, the issue in this case is simply whether the borrowing of money in an ordinary commercial bank loan transaction by Travel Management Corpora-

tion from plaintiff Avenue State Bank and the giving of a promissory note to evidence the indebtedness, where the bank loan was used to pay off a debt owing to one of defendant's suppliers, constituted the "sale" of a "security" within the Securities Act of 1933. This issue is one of the most hotly contested and least clearly resolved questions in securities law today.

Professor Loss posed the question, and the two lines of argument, in his treatise:

> When the borrower uses the mails or some facility of interstate commerce, and obtains a loan from the bank by means of fraud or misstatement, it is difficult to say whether the borrower has violated the anti-fraud provisions of the 1933 and 1934 Acts and whether he may be sued civilly under Section 12(2) of the 1933 Act. Under a

---

1. Section 12(2) of the Securities Act of 1933 provides that "Any person who—(2) offers or sells a security (whether or not exempted . . .), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact . . . . and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable . . . ." 15 U.S.C. § 77l.

2. Section 17(a) of the Securities Act of 1933 provides that "It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—(1) to employ any device, scheme, or artifice to defraud, or (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser." 15 U.S.C. § 77q.

3. The allegations are phrased in terms of a fraudulent "sale" rather than in terms of a

fraudulent "purchase" for both conceptual and statutory reasons. Conceptually, the word "sale" rather than "purchase" is necessary because it is the payee of the note who is asserting that it, as the "purchaser" of a "security", was defrauded by the maker of the note, as the "seller" of a "security". But the distinction is more than conceptually significant in view of the statutory scheme of the federal securities act. The Securities Act of 1933, 15 U.S.C. §§ 77a–77aa (1970), prohibits only fraud on the part of sellers. Section 11(a) of the 1933 Act, 15 U.S.C. § 77k(a) (1970), imposes civil liability on certain persons involved in the preparation of a registration statement; such persons are necessarily on the "seller's side" of the picture. Similarly, sections 12(2) and 17(a) of the 1933 Act are limited to fraud on the part of offerors or sellers of securities. 15 U.S.C. § 77l(2) (1970) ("Any person who . . . offers or sells a security"); 15 U.S.C. § 77q(a) (1970) ("any person in the offer or sale of any security"). In contrast, the 1934 Act prohibits fraud on the part of both purchasers and sellers of securities.

However, since the motion before us is resolved on the basis of what is a security, and since the definition of security in the 1933 Act is the functional equivalent of the definition of security in the 1934 Act, S. Rep.No. 792, 73d Cong.2d Sess. 14 (1934); Tcherepnin v. Knight, 389 U.S. 332, 336, 342, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967), we use cases dealing with this aspect of the respective Acts interchangeably.

literal reading the answer would seem to be yes. But again the definitions —of both "security" and "sale"—in Section 2 apply "unless the context otherwise requires." It might be argued that Congress would have been more explicit if it had intended to provide a federal civil remedy in the context of the ordinary promissory note. 1 Loss, Ch. 3A at 546.

██ In essence, two principles expounded by the Supreme Court in securities cases—each of which suggests a different resolution to this problem— must be analyzed, balanced, and weighed. The first is that the Court has indicated that the words used in the definition of "security" are generic and should be given very broad meanings; Congress did not intend a strict construction of the word security. Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). The second principle is that one must consider context-over-text when examining the language of the statute; in searching for the meaning and scope of the word "security" in the Act, form should be disregarded for substance and the emphasis should be on economic reality. Tcherepnin v. Knight, 389 U.S. 336, 88 S.Ct. 548 (1967), citing SEC v. W. J. Howey Co., 328 U.S. 293, 298, 66 S.Ct. 1100, 90 L. Ed. 1244 (1946). And generally, while both these principles have been used to expand further and further that which might be considered a "security" for purposes of the Acts, it is clear that the required substance-over-form approach can, and in appropriate cases should, be used to *exclude* as well as include instruments within that definition. Comment, Commercial Notes and Definition of 'Security' Under Securities Exchange Act of 1934: A Note is a Note is a Note?, 52 Neb.L.Rev. 478 at n. 51. [Hereinafter, Commercial Notes]. It is our belief, and we think that a close analysis and criticism of judicial precedents supports our view, that even a required broad interpretation of the definition of security should not include the type of ordinary bank transaction presented for our consideration here.

### III.

The definition of "security" for purposes of the Securities Act of 1933 is found in 15 U.S.C. § 77b(1), which states in full:

When used in this subchapter, *unless the context otherwise requires*—

(1) The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing (emphasis added).

██ An analysis of the cases cited by plaintiff reveals that each has ignored the cardinal rule embodied in the statute itself that the definitions given are to be applied only if the context does not otherwise require. Surely Congress, by explicitly requiring the context-over-text method of construction, intended each question to be viewed as a matter of statutory interpretation, involving an analysis of the statute itself. Thus, the courts do not have *discretion* "to construe the word 'security' as including certain types of notes but not others." Movielab, Inc. v. Berkey Photo, Inc., 321 F.Supp. 806, 809 (S.D.N.Y.1970). Rather, unless the "context" language of the statute is to be wrongly ignored altogether, it is manifest that Congress did in fact mean to say that some notes are securities while others are not. It is our premise that, viewing the intent of

Congress, the context does require non-security treatment for the notes at suit herein.

Although there is no history on whether ordinary commercial notes are to be included in the definition of "security", the history of both the 1933 and 1934 Acts reveals a preoccupation with *investment* instruments. Commercial Notes, *supra*, at 486–487.

President Roosevelt's messages to Congress on both Acts indicate his concern with investments.[4] Similarly, the concept of regulating investments permeates the Congressional reports on both Acts. The Senate Report accompanying the 1933 Act states:

> The purpose of this bill is to protect the *investing public* and honest business. The basic policy is that of informing the *investor* of the facts concerning securities to be offered for sale in interstate and foreign commerce and providing protection against fraud and misrepresentation. S.Rep. No. 47, 73d Cong., 1st Sess. 1 (1933) (emphasis added).

The House report on the 1933 Act states that the definition of "security" is "in sufficiently broad and general terms so as to include within that definition the many types of instruments that in our commercial world fall within the *ordinary concept of a security*." H.Rep. No. 85, 73d Cong., 1st Sess. 11 (1933) (emphasis added). Similarly, the legislative history behind the 1934 Act also indicates an intent to control investment instruments without any concern over the ordinary commercial bank loan of the kind described herein.

The emphasis in all this legislative history on investment instruments indicates that Congress certainly was not concerned with regulating ordinary commercial notes. This emphasis was incorporated into law by inclusion of the required context-over-text method of statutory interpretation in the 1933 and 1934 Acts. And generally, it is the disregard of the statute's import in the cases which plaintiff cites which makes them unpersuasive as precedents.

In Lehigh Valley Trust Co. v. Central National Bank of Jacksonville, 409 F.2d 989 (5th Cir. 1969), the defendant bank had loaned as much money as banking law permits to a corporation on the verge of collapse. Because defendant sought to protect its prior loans, it marketed participation interests to other banks, including plaintiff, upon fraudulent misrepresentations. The court affirmed the jury verdict and held that the loan participation agreement was clearly within the statutory definition of a security, stating that the "definition of a security has been literally read by the judiciary to the extent that almost all notes are held to be securities." *Lehigh, supra*, at 991–992. We note, first, that this statement is an inaccurate summary of the views of the entire judiciary. Further, this case is factually distinguishable from *Avenue* in that the note itself in *Lehigh* may not be a security, while a loan participation agreement in the note is. In *Lehigh*, defendant Central Bank essentially had sold and offered to an apparently large group of persons participation in the enterprise, and so such persons might properly be considered investors.

*Lehigh* relied, to some extent, on the leading case of Llanos v. United States, 206 F.2d 852 (9th Cir. 1953), cert. denied, 346 U.S. 923, 74 S.Ct. 310, 98 L. Ed. 417 (1954). *Llanos* involved a criminal prosecution for fraud under the 1933 Act and for mail fraud. However, *Llanos*, which reminds us that the word

---

4. The President's March 29, 1933, message to Congress, promoting the 1933 Act, is found at S.Rep.No. 47, 73d Cong., 1st Sess. 6 (1933), and at H.R.Rep.No. 85, 73d Cong., 1st Sess. 1 (1933) ("supervision of traffic in investment securities in interstate commerce"). His Feb. 9, 1934, message urging the legislation of what became the 1934 Act is found at S.Rep.No. 792, 73d Cong., 2d Sess. 1 (1934), and at H.R.Rep.No. 1383, 73d Cong., 2d Sess. 1 (1934) ("supervision of the purchase and sale of all property dealt with on exchanges;" "regulating the investment business").

"security" should not be construed narrowly, is factually inapposite to the case at bar. *Llanos* did not involve an ordinary commercial transaction similar to the transaction herein, but rather involved the sale of notes to many individuals, somewhat in the nature of a public offering, to finance a criminal enterprise. Clearly, there is an investment aspect to that scheme which is absent here.

Plaintiff argues that we are bound by the Seventh Circuit case of Sanders v. John Nuveen & Co., 463 F.2d 1075 (7th Cir. 1972), but we do not read *Sanders* as dictating a contrary result from the one we reach.

■ The court in *Sanders* held that certain short-term commerical paper, offered and sold to the general public, were securities despite the fact that the paper fell within the literal exemption of short-term notes from the definition of "security" in the 1934 Act. Although the holding in *Sanders* is clearly correct, it does not follow, as plaintiff contends, that because a note is not excluded from coverage that it is therefore automatically a "security". Rather, one must still apply the "context-over-text" test of the definition. *Sanders* itself draws a distinction between commercial notes and investment notes:

> When a prospective borrower approaches a bank for a loan and gives his note in consideration for it, the bank has purchased commercial paper. But a person who seeks to invest his money and receives a note in return for it has not purchased commercial paper in the usual sense. He has purchased a security investment. 463 F. 2d at 1080.

■ Our conclusion is supported, too, by McClure v. First National Bank, 352 F.Supp. 454 (N.D.Tex.1973), wherein the court was presented with a factual situation strikingly similar to the one at bar. That court addressed the issue of whether the notes therein were "securities", and in recognizing that the court was not permitted to give the definition

an absolutely literal construction, realized that to do so would be to place under the coverage of these Acts many day-to-day loan transactions unrelated to the fraud-related abuses which Congress was attempting to regulate through these Acts. *McClure* bolstered its conclusion, stating:

> Thus these particular notes and transactions are not "securities" within the meaning of the Act. But even if these instruments complained of are securities, the transactions complained of must constitute the "purchase or sale" of such securities in order for liability to exist under the Act and in order for this Court to have jurisdiction over the present complaint. The Court holds that these transactions do not constitute the "purchase or sale" of securities and that for this additional reason plaintiff has not a cause of action under federal law. 352 F. Supp. at 458.

We agree that "one does not normally speak of the 'purchase' or 'sale' of a loan, whether or not it is evidenced by a note." SEC v. Fifth Avenue Coach Lines, Inc., 289 F.Supp. 3, 38 (S.D.N.Y. 1968).

Finally, we note the recent case of Lino v. City Investing Co., 487 F.2d 689 (3d Cir. 1973), wherein the plaintiff was a purchaser of two franchise sales center licensing agreements; payment was made therefor with cash and several promissory notes. The Third Circuit reversed a lower court ruling, and remanded with instructions to dismiss the action, because there was no "common sense" way to describe the transaction as the purchase of securities. The court stated, 487 F.2d at 694:

> The legislation was not intended to cover the transaction which occurred here. All of the definitional sections involved in this case are introduced by the phrase "unless the context otherwise requires." The commercial context of this case requires a holding that the transaction did not involve a "purchase" of securities. These were

personal promissory notes issued by a private party.

Obviously, in dismissing this suit, this court is in no way condoning any fraud which might have been perpetrated; we note the availability of the state courts and state commercial legislation to provide a remedy for plaintiff's grievances. Thus, finding that this court lacks subject-matter jurisdiction over the controversy before it, we grant defendants' motion to dismiss.