OXFORD FINANCE COMPANIES, INC., et al.

v.

Walter B. HARVEY, Jr., et al.

Civ. A. No. 74–274.

United States District Court, E. D. Pennsylvania.

Nov. 25, 1974.

------◆------

Jerome R. Richter, Robert C. Ozer, William E. Taylor, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for plaintiffs.

Andrew S. Price, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for defendants Walter B. Harvey, Jr., Edith S. Harvey South Central Oil & Development Corp., Harvey's International, Inc.

Henry R. Janssen, Rawle & Henderson, Philadelphia, Pa., for defendant James R. Chambless.

Alan Klein, Drinker, Biddle & Reath, Philadelphia, Pa., for defendant Walter Harvey Corp.

## MEMORANDUM

JOSEPH S. LORD, III, Chief Judge.

On October 19, 1973, Oxford Premium Sales Corp. ("Oxford") and South Central Oil and Development Corp. ("South Central") entered into a Joint Venture Agreement "for the improvement of a certain parcel of real property situated in Key West, Florida." (Joint Venture Agreement, p. 1). The Agreement was amended on November 13, 1973. The relationship soured and plaintiffs[1] subsequently instituted this action alleging (1) breach of the Agreement, its amendment, and a Surety Agreement also executed on November 13, 1973 (Counts I and II); (2) common law fraud (Count III); and (3) violations of the federal securities laws (Count V). All defendants except Kohlmeyer and Co. have moved to dismiss Count V, asserting that no "security" was involved in the transactions between plaintiffs and defendants. We agree.

Count V sets forth alleged examples of willful misrepresentations made by defendants concerning their financial condition, on which plaintiffs claim to have relied in deciding to enter the venture. Plaintiffs assert that this alleged conduct transgressed § 17 of the Securities Act of 1933 (" '33 Act"), 15 U.S.C. § 77q, § 10(b) of the Securities Exchange Act of 1934 (" '34 Act"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 210.10b–5. Collectively, these provisions prohibit fraud, material misrepresentation, or deception in the purchase or sale of a "security".

Section 2(1) of the '33 Act, 15 U.S.C. § 77b(1) provides in pertinent part:

"* * * *unless the context otherwise requires—*

"(1) The term 'security' means any note, * * * evidence of indebtedness, * * * investment contract, * * * or, in general, any interest or instrument commonly known as a 'security' * * *."

(Emphasis added.)

l. Plaintiffs Oxford Finance Companies, Inc., Oxford Premium Sales Corp. and Common- wealth Financial Corp. are all wholly owned subsidiaries of Oxford First Corp.

The '33 Act definition is "virtually identical to that contained in the 1934 Act",[2] Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564, 569 (1967), and therefore " * * * whether the question of what is a security arises under the 1933 Act or the 1934 Act, the test to be applied is identical." Wasnowic v. Chicago Board of Trade, 352 F.Supp. 1066, 1070 (M.D.Pa. 1972), aff'd. 491 F.2d 752 (C.A.3, 1974). In interpreting these definitions " * * * we are guided by the familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes." Tcherepnin v. Knight, *supra*, 389 U.S. at 336, 88 S.Ct. at 553, 19 L.Ed. at 569. The definitional sections list many common documents, and "[i]nstruments may be included within any of these definitions, as a matter of law, if on their face they answer to [a listed] name or description." S. E. C. v. C. M. Joiner Leasing Corp., 320 U.S. 344, 351, 64 S.Ct. 120, 123, 88 L.Ed. 88 (1943). On the other hand, Congress has specifically directed that the context of a transaction must be given precedence over the label attached to a particular instrument. Avenue State Bank v. Tourtelot, 379 F. Supp. 250, 253 (N.D.Ill.1974). "[F]orm should be disregarded for substance and the emphasis should be on economic reality." Tcherepnin v. Knight, *supra*, 389 U.S. at 336, 88 S.Ct. at 553, 19 L.Ed. at 569. With these principles in mind we shall examine the documents alleged by plaintiffs to constitute "securities."

A. *The Joint Venture Agreement of October 19, 1973, and as amended on November 13, 1973*

Plaintiffs argue that the Joint Venture Agreement and its amendment constitute an "investment contract." In S. E. C. v. W. J. Howey Co., 328 U.S. 293, 298–299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946), the Court defined "investment contract" as

" * * * a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party."

While some courts have interpreted the word "solely" in its most narrow sense, *see, e. g.*, Mr. Steak, Inc. v. River City Steak, 460 F.2d 666 (C.A.10, 1972); aff'g. 324 F.Supp. 640 (D.Colo.1970), the Third Circuit has adopted a more elastic approach.

" * * * [A]n investment contract can exist where the investor is required to perform some duties, as long as they are nominal or limited and would have 'little direct effect upon receipt by the participant of the benefits promised by the promoters.' " Lino v. City Investing Co., 487 F.2d 689 (C.A.3, 1973), citing Securities Act Release No. 5211 (Nov. 30, 1971) reported in 1971–72 Transfer Binder CCH Fed.Sec.L.Rep. ¶ 78446.

■ Even under this expansive reading, however, the Joint Venture Agreement is not an "investment contract." Article VIII of the original Agreement (pp. 15–16) is entitled "MANAGEMENT DECISIONS". It states:

"8.1. DECISIONS: Except as otherwise herein provided, all management decisions and actions of the Joint Venture shall require the consent of *both venturers*. Specifically any expenditures above $10,000 shall require the written consent of *Oxford*, which consent shall not be unreasonably withheld or delayed * * *.

"8.2. PLANS AND SPECIFICATIONS: All plans and specifications shall require the approval of *Oxford*. Any substantial change, modification or variation in such plans and specifications shall require the consent of *Oxford* which consent shall not be unreasonably withheld or delayed * * *.

"8.3. CONSTRUCTION AND MARKETING: Except as otherwise pro-

2. Section 3(a)(10) or the '34 Act, 15 U.S.C. § 78c(a)(10) defines the word "security".

vided, decisions concerning the construction and marketing of improvements may be taken by South Central alone, *provided that such are substantially in accordance with the plans and specifications * * *.*

"8.4. SALES PRICES: The schedule of prices * * * shall not be lowered without the consent of *Oxford and Commonwealth,* which consent shall not be unreasonably withheld or delayed * * *." (Emphasis added.)

Thus, most managerial decisions must be approved by both parties. The only decisions which South Central may take alone concern construction and marketing, and even those must be compatible with the plans and specifications over which Oxford has joint control. Were this the extent of Oxford's involvement, the Agreement would not be an "investment contract" since the powers reserved by Oxford under Article VIII are in no sense "nominal or limited". Oxford's control, however, extends further. Article XI provides:

"All funds of the Joint Venture are to be deposited in the Joint Venture name in such bank account or accounts as shall be designated by the Venturers. Withdrawals from any such bank account or accounts shall be made only upon the signatures of authorized representatives of *both Venturers.* Such accounts shall be maintained in Philadelphia, Pennsylvania." (Emphasis added.)

The fate of any business venture depends, in large measure, on the management of capital. Funds wisely spent cannot ensure success, but funds improvidently allocated almost certainly spell disaster. Joint control of capital withdrawals is thus another important managerial power which affords Oxford significant protection of its original investment. In light of these extensive controls retained by Oxford, the original Agreement is clearly not an "investment contract."

The November 13th amendment, which gives Oxford additional powers, adds nothing to plaintiffs' argument. Paragraph 7 of the amendment requires that a representative of Oxford co-sign all checks drawn on the Joint Venture bank accounts, while Paragraph 9 provides:

"No additional obligations shall be incurred on behalf of the joint venture without the prior written consent of Oxford, anything to the contrary in Article 8.1. of the Agreement notwithstanding."

We therefore conclude that the original Agreement and its amendment create no more than a garden variety joint venture—"* * * normally * * * the antithesis of an 'investment contract' * * *." Jennings and Marsh, Securities Regulation, Cases and Materials, p. 308 (3rd ed., 1972). Substantial managerial control coupled with the power to control the venture's disbursement of funds overwhelmingly negates the finding of a "security".

B. *All other documents: the mortgage, notes, surety agreement, check, and related amendments*

■ All of these documents were executed as part of the joint venture undertaken by plaintiffs and defendants. We are aware that, on their face, they fall within two categories listed in the definitional sections of the '33 Act and '34 Act—"notes" and "evidence of indebtedness".[3] However, as stated earlier, text must give way to context.

" * * * [U]nless the 'context' language of the statute is to be wrongly ignored altogether, it is manifest that Congress did in fact mean to say that some notes [and some evidence of indebtedness] are securities while others are not." Avenue State Bank v. Tourtelot, *supra,* 379 F.Supp. at 253.

" * * * [T]he history of both the 1933 and 1934 Acts reveals a preoccupa-

---

3. While the phrase "evidence of indebtedness" does not appear in the '34 Act definition of a "security", we will assume that it

is implied in that definition, in order to construe the term "security" as broadly as possible.

tion with *investment* instruments." *Id.* at 254. Having found that the basic Joint Venture Agreement is not an "investment contract", it would be anomalous to hold now that instruments executed pursuant to that venture are *"investment* instruments." Rather, it is clear that the mortgage agreement, notes, surety agreement, check, and related amendments all arose out of an ordinary commercial setting, and not in an *investment* context. Had the obligations imposed by these documents appeared in the body of the Joint Venture Agreement itself, and not on separate pieces of paper with separate captions, we would have no difficulty in holding that they were not "securities." Since substance, not form, governs our inquiry, we must reach the same conclusion under the facts as presented. We therefore hold that none of these instruments constitutes a "security" within the meaning of the federal securities laws.

Since no "security" was involved in the transactions between plaintiffs and defendants, we lack subject matter jurisdiction of Count V. Accordingly, Count V will be dismissed.