J. C. BELLAH and wife Fern Bellah, Plaintiffs-Appellants,

v.

The **FIRST NATIONAL BANK OF HEREFORD**, Hereford, **TEXAS**, Defendant-Appellee.

No. 73–2867.

United States Court of Appeals, Fifth Circuit.

June 14, 1974.

Herbert C. Martin, Jay U. Kirkman, Amarillo, Tex., for plaintiffs-appellants.

D. Wesley Gulley, Hereford, Tex., for defendant-appellee.

Before GEWIN, THORNBERRY and SIMPSON, Circuit Judges.

GEWIN, Circuit Judge:

J. C. and Fern Bellah (the Bellahs), husband and wife, appeal from a district court order dismissing their complaint alleging that the First National Bank of Hereford (the Bank) had committed violations of 15 U.S.C. § 78j(b) (1970) and Rule 10b–5 promulgated pursuant thereto.[1] Jurisdiction under the aforementioned Securities Exchange Act of 1934 was premised on the assertion that a promissory note and deed of trust securing the note, both of which were issued by the Bellahs, and a certificate of deposit, subsequently issued by the Bank, were securities. Disagreeing with this assertion, the district court dismissed the complaint with prejudice for lack of jurisdiction of the subject matter. We affirm except to the extent that dismissal was with prejudice as to the alleged claim based on the certificate of deposit.

I

This suit had its inception in a 1963 loan by the Bank to the Bellahs to aid them in the development of a livestock business. Continuing misfortunes left the indebtedness unliquidated, and hence on March 20, 1967, the Bellahs executed a six-month promissory note, secured by a deed of trust on real property in favor of the Bank, for the principal sum of $259,121.82. This note renewed all prior credit extended to them. The ancillary deed of trust conveyed 17 tracts of their real property as collateral, inferior to prior liens on the real estate. This combined obligation was subsequently twice renewed.

The most recent renewal is the subject of the instant litigation. On January 29, 1969, the Bellahs executed a promissory note of six-months maturity, collateralized by a deed of trust. They allege in their complaint that the Bank made several misrepresentations concomitant with the execution of the note, *inter alia,* that the Bellahs need not worry about foreclosure as long as the prior and superior deeds of trust were kept current. This misrepresentation purportedly induced them to forego the initiation of federal bankruptcy reorganization proceedings. In December of 1969, they also arranged for $50,000 to be deposited in the Bank, through the First Mortgage Company of Houston, in exchange for which a certificate of deposit was issued. The Bellahs claim that this transaction was negotiated upon the agreement by the Bank that an equivalent amount would be loaned to them for the purpose of financing and recycling cattle. This latter exchange, allegedly effected to raise the capital structure of the Bank and thereby enable it to make the additional $50,000 loan, never materialized. Moreover, the Bellahs' delinquency on the January 12, 1969 note

---

1. Section 10(b), 15 U.S.C. § 78j(b), provides that:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or any facility of any national securities exchange—

\* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

17 C.F.R. § 240.10b–5 stipulates that:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

prompted the Bank to foreclose and sell the real estate covered by the deed of trust.

The complaint asserted three potential bases for finding subject matter jurisdiction: (1) the note; (2) the deed of trust; and (3) the certificate of deposit. In a truncated opinion, the district court elected to treat the note and ancillary deed of trust as one, and held that irrespective of whether the note and deed of trust were commercial or investment in nature, they fell within the exemption of notes maturing in less than 9 months. *See* 15 U.S.C. § 78c(a)(10). The court failed to address the contention that the certificate of deposit was a security.[2]

## II

It is in this posture that the case is before us on appeal. The district court correctly considered the note and accompanying deed of trust collectively as one potential basis of jurisdiction. Indeed, if the note were not characterizable as a security, it is difficult to conceive of how the deed of trust which secured it could be so characterized. Accordingly, we proceed to consider whether the note and deed of trust or the certificate of deposit are securities.

### A. *Note and Deed of Trust*

The definitional section of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10) (1970) provides that unless the context otherwise requires:

> "(10) The term 'security' means any note . . . but shall not include . . . any note . . . which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited."

Despite the seemingly absolute mandate of this language, numerous other courts have refused to ritualistically apply the section. *See* Zeller v. Bogue Electric Manufacturing Corp., 476 F.2d 795, 800 (2d Cir. 1973); Sanders v. John Nuveen & Co., Inc., 463 F.2d 1075, 1080 (7th Cir.), cert. denied, 409 U.S. 1009, 93 S. Ct. 443, 34 L.Ed.2d 302 (1972); SEC v. Vanco, Inc., 283 F.2d 304 (3d Cir. 1960), aff'g, 166 F.Supp. 422, 423 (D.N.J. 1958); United States v. Hill, 298 F. Supp. 1221, 1226–1227 (D.Conn.1969); Anderson v. Francis I. duPont & Co., 291 F.Supp. 705, 708 (D.Minn.1968); *cf.* United States v. Rachal, 473 F.2d 1338, 1343 (5th Cir. 1973). Rather, they have deemed notes with maturity dates not exceeding nine months to be subject to the Securities Exchange Act of 1934 where the notes constituted investment paper, not commercial paper. Illustrative of the reasoning underlying such dispositions is that expressed in Zeller v. Bogue Electric Manufacturing Corp., *supra* at 800:

> "[T]he mere fact that a note has a maturity of less than nine months does not take the case out of Rule 10b–5, unless the note fits the general notion of 'commercial paper' . . . It does not follow . . . that every transaction within the introductory clause of § 10, which involves promissory notes, whether of less or more than nine months maturity, is within Rule 10b–5. The Act is for the protection of investors, and its provisions must be read accordingly."

*See also* Sanders v. John Nuveen & Co., *supra* at 1080.

This reasoning gives due recognition to the Supreme Court's admonition in SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 195, 84 S.Ct. 275, 285, 11 L.Ed.2d 237, 248 (1963) that anti-fraud securities legislation is to be read "not technically and restric-

---

2. A review of the complaint filed by the Bellahs suggests that this omission was readily understandable. The first four paragraphs of the complaint refer only to the note and deed of trust transactions. Paragraph five catalogues twelve alleged fraudulent induce-ments, the last of which revolved around the certificate of deposit transaction. Thus, it is only through a benevolent reading that the complaint could be deemed to posit the certificate of deposit as a predicate for subject matter jurisdiction.

tively, but flexibly to effectuate its remedial purposes" and is compatible with that expressed in SEC v. C. M. Joiner Leasing Corp., 320 U.S. 344, 350–351, 64 S.Ct. 120, 123, 88 L.Ed. 88, 93 (1943) that:

> "However well these rules [of statutory construction] may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy." (footnote omitted.)

And it is this reasoning which led us to approve in United States v. Rachal, 473 F.2d 1338, 1343 (5th Cir. 1973) an in-

struction given by a trial court which provided that the exemption of short-term notes from the registration provisions of the Securities Exchange Act of 1933 applied only to commercial not investment paper.[3] Since the '33 and '34 Acts, while not precisely the same, are virtually identical, see Zeller v. Bogue Electric Manufacturing Corp., supra at 799–800; Anderson v. Francis I. duPont & Co., supra at 708, we think that this court's approval of the instruction in Rachal portends our holding that the exemption for short-term paper under the Securities Exchange Act of 1934 applies only to commercial paper and not investment paper. To this extent, the district court's exclusive reliance on the maturity date of the note was misplaced.[4]

The disposition of this appeal hence ultimately hinges upon whether the note executed by the Bellahs can be charac-

---

3. The Securities Act of 1933 and the Securities Exchange Act of 1934 address the short-term commercial paper exemption in different fashions. As was indicated supra, the '34 Act provides for the exemption in its definitional section. See 15 U.S.C. § 78c(a) (1970). In contrast, the '33 Act, 15 U.S.C. § 77c(a) (1970) exempts short-term notes from the registration requirements set forth in 15 U.S.C. § 77c (1970), but not from the Acts anti-fraud proscriptions. Section 77c (a) exempts:

> "(3) Any note, draft, bill of exchange, or banker's acceptance which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited."

The SEC has endeavored to explicate the requirements of this section in Securities Act Rel. No. 4412, 26 Fed.Reg. at 9159. This release provides that:

> "The legislative history of the Act makes clear that section 3(a)(3) applies only to prime quality negotiable paper of a type not ordinarily purchased by the general public, that is, paper used to facilitate well recognized types of current operational business requirements and of a type eligible for discounting by Federal Reserve banks."

This release, instructive as to the '34 Act's exemption for short-term notes, Zeller v.

Bogue Electric Manufacturing Corp., supra at 800, has been construed to disqualify from characterization as commercial paper, a note issued by an individual or corporation in precarious financial condition. See Sanders v. John Nuveen & Co., Inc., supra at 1079; United States v. Hill, supra at 1227. In these two cases, suits were brought seeking to subject the makers of promissory notes to the Securities Exchange Act of 1934. In contrast, in this case, the maker of a promissory note seeks to invoke the Act's prophylactic protection. While we do not disparage the conclusions reached in Hill and Sanders, we do suggest that a maker cannot bring the notes he executes within the Act merely by demonstrating his own lack of fiscal integrity. While the investment-commercial dichotomy is not intractable, it is not as chameleon-like as the Bellahs' contention would render it.

4. The Bellahs proffered the argument that the promissory note which formed the basis for this 10b–5 action should not be viewed in isolation from the prior notes, the obligations of which it renewed. Were a ritualistic application of the short-term note exemption to be countenanced, the purposes of the Act could be easily undermined by short-term notes issued and then renewed over a protracted time period. However, our conclusion that the exemption applies only to commercial paper warrants pretermission of the Bellahs contention.

terized as commercial or investment in nature. In this vein, McClure v. First National Bank of Lubbock, 352 F.Supp. 454 (N.D.Tex.1973), appeal pending, No. 73–1376; Lino v. City Investing Co., 487 F.2d 689 (3d Cir. 1973); and Sanders v. John Nuveen & Co., *supra*, are particularly instructive.[5]

In McClure v. First National Bank of Lubbock, *supra*, Juanita McClure, a one-half owner of common stock in and Secretary of Gaines City Development (GCD), was allegedly induced by the First National Bank of Lubbock and her former husband who was president of GCD to execute a $200,000 note from GCD to the bank supposedly to liquidate the corporation's bad debts. This note was secured by a deed of trust which mortgaged to the bank a parcel of land which constituted substantially all the assets of the corporation. Further inquiry revealed that the proceeds of this loan were actually applied in payment of her former husband's debt to the bank and not in payment of corporate obligations. Moreover, several years later, McClure executed a separate collateral agreement, pledging to the bank a portion of all her own stock for the purpose of securing a new note which would renew and extend the original note issued by GCD. GCD's delinquency in fulfilling these obligations prompted the bank to institute foreclosure proceedings, pursuant to which all its real estate was sold to the bank.

The district court held that jurisdiction of the subject matter was lacking. Characterizing the alleged transactions as involving no more than mere internal corporate mismanagement, 352 F.Supp. at 458, it concluded that "the transactions involved amount to little more than ordinary commercial loans not intended

to be covered by the Act. These transactions are totally unrelated to the abuses involving 'trading for speculation or investment,' which abuses Congress in 1934 sought to eliminate." 352 F.Supp. at 457–458.

Lino v. City Investing Co., *supra*, and Sanders v. John Nuveen & Co., *supra*, employ reasoning similar to that adopted in *McClure*. In *Lino*, a 10b–5 action was instituted by a purchaser of a franchise sales center license for which promissory notes had been issued to the franchisor in partial payment. The Third Circuit characterized the notes as commercial and not investment in nature because it defined logic to assume that City Investing Co. purchased Lino's note and gave as payment, a right to operate a franchise sales center. And in *Sanders*, the Seventh Circuit expressed its view that "[w]hen a prospective borrower approaches a bank for a loan and gives his note in consideration for it, the bank has purchased commercial paper." 463 F.2d at 1080 (dicta).

We think that the reasoning articulated in these cases is compelling, and supports the conclusion that the note issued by the Bellahs in this case was commercial paper and not investment paper. The record reveals that in extending the loans, the Bank merely intended to aid the Bellahs in the operation of their livestock business. It is bereft of any evidence indicating that the Bank sought to profit from the successful operation of this enterprise. This court's previous remonstrations that under the Act, almost all notes are securities, *see* Rekant v. Desser, 425 F. 2d 872, 878 (5th Cir. 1970); Lehigh Valley Trust Co. v. Central Bank of Jacksonville, 409 F.2d 989, 991–992 (5th Cir. 1969), imply that some notes are

---

5. The commercial-investment dichotomy is also addressed in Zeller v. Bogue Electric Manufacturing Corp., *supra*; City National Bank v. Vanderboom, 290 F.Supp. 592 (W. D.Ark.1968), aff'd, 422 F.2d 221 (8th Cir.), cert. denied, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970); SEC v. Fifth Avenue Coach Lines, Inc., 289 F.Supp. 3 (S.D.N.Y.

1968), aff'd on other grounds, 435 F.2d 510 (2d Cir. 1970); Davis v. Avco Corp., 371 F.Supp. 782, 787 (N.D.Ohio 1974); SEC v. Thunderbird Valley, Inc., 356 F.Supp. 184 (D.S.Dakota 1973); Joseph v. Norman's Health Club, Inc., 336 F.Supp. 307 (E.D. Missouri 1971).

not. We merely hold that notes issued in the context of a commercial loan transaction fall beyond the purview of the Act.

Our disposition is buttressed by a recognition of the unsalutary consequences that would be generated by a contrary result. First, in view of the previously acknowledged similitude of the '33 and '34 Acts, notes subject to the anti-fraud proscriptions of the latter would be amenable to the registration provisions of the former. Registration is a costly procedure, both temporally and financially speaking. Subjection of loan transactions involving a promissory note to the registration requirements would inevitably wreak havoc on the commercial paper market. We have grave doubts that such a result was sought by Congress. Second, the Securities Act of 1933 and the Securities Exchange Act of 1934 create for participants in note transactions a broad but nevertheless not boundless federal forum for vindicating their grievances. We doubt that Congress intended by these Acts to render federal judges the guardians of all beguiled makers or payees. Where, as here, complaints are spawned by a commercial loan transaction, recourse must be had to state not federal courts. Mindful of these policy considerations and the reasoning employed by courts in adumbrating the commercial-investment dichotomy, we reject the Bellahs' claim that the note and the ancillary deed of trust are securities.

### B. *Certificate of Deposit*

██ Section 78c(a)(10) of the Securities Exchange Act of 1934 includes as a security a "certificate of deposit, for a

security." Under the judicial gloss placed on this language, a certificate of deposit issued in exchange for currency is not encompassed within the section because currency is not a security. Superintendent of Insurance of State of New York v. Banker's Life & Casualty Co., 300 F.Supp. 1083, 1099 (S.D.N.Y. 1969), aff'd, 430 F.2d 355 (2d Cir. 1970), rev'd on other grounds, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); SEC v. Fifth Avenue Coach Lines, Inc., 289 F.Supp. 3, 31 (S.D.N.Y.1968) aff'd on other grounds, 435 F.2d 510 (2d Cir. 1970). To the extent that the Bellahs rely on a contrary proposition, their argument is thus unavailing.

We confess, however, that we have endeavored in vain to divine the precise theory upon which their contention is bottomed.[6] Despite a scrutinizing examination of the record and the briefs on appeal, and attempts to elicit guidance from counsel at oral argument, we have been able to ascertain only that the Bellahs invoke as support for their position two cases, Superintendent of Insurance of State of New York v. Banker's Life & Casualty Co., 300 F.Supp. 1083 (S.D.N.Y.1969), and Young v. Seaboard Corp., 360 F.Supp. 490 (D.Utah 1973). The understandable failure of the district court to address the certificate of deposit issue compounds the difficulty posed by the nebulous argument presented on appeal. Nevertheless, notwithstanding these impediments to review, we undertake to explore the applicability of the aforementioned decisions to the instant case.

Clearly, Superintendent of Insurance of State of New York v. Banker's Life & Casualty Co., 300 F.Supp. 1083 (S.D.N.

---

6. Counsel for the Bank assumed that the Bellahs were contending that the certificate of deposit transaction was an investment contract. This assumption was reasonable in view of the Bellahs' reference in their brief to Safeway Portland Employees Credit Union v. C. H. Wagner & Co., 335 F.Supp. 116 (D.Or.1971). This case involved a scheme wherein defendant Wagner & Company solicited purchases of certificates of deposit issued by a bank, holding out as an inducement to purchase, Wagner & Company's promise to pay ⅝% interest at maturity.
The purchases of the certificates of deposit enabled the bank to make loans to substandard borrowers who would pay Wagner & Company a broker's fee. Because of the investment nature of the scheme, the court held that an investment contract existed. Again, the investment character is lacking in the instant case.

Y.1969) provides no comfort. This much is manifest by the fact that the district court expressly refrained from reaching the question of whether certain certificates of deposit issued in order to conceal the depletion of Manhattan Casualty Company's assets by Banker's Life & Casualty Company and two individual defendants were securities. *See* 300 F. Supp. at 1099. Moreover, the district court intimated in dicta that the certificates of deposit could not qualify under the Securities Exchange Act of 1934 either as evidences of indebtedness or as notes. *See* 300 F.Supp. at 1100.

Young v. Seaboard Corp., 360 F.Supp. 490 (D.Utah 1973) is of similar inutility. There, shareholders of the now defunct National Bank of Coalville, instituted a section 10b–5 action, claiming that the Seaboard Corporation (Seaboard) had fraudulently precipitated the demise of the bank. Seaboard allegedly caused one million dollars to be deposited in the bank in exchange for certificates of deposit and payment of an illegal finder's fee. The deposits and finder's fees prompted the bank to make at least $450,000 in bad loans, purportedly to Seaboard's designees.

The reasoning employed in treating these deposit and loan transactions as purchases or sales of securities is somewhat obtuse.[7] The court appears to have relied on two theories. First, the certificates of deposit could be characterized as short-term promissory notes under Zeller v. Bogue Electric Manufacturing Corp., *supra.* But, as we noted earlier, *Zeller* endorsed the investment-commercial dichotomy which we countenanced and then applied adversely to the Bellahs' contentions. In support of the second theory to which it attached no appellation, the district court cited Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967) where the Supreme Court held that withdrawable capital shares in an Illinois Savings & Loan Association, City Savings Association of Chicago, could qualify as a security under the '34 Act. In reaching this conclusion, the Supreme Court had observed that shareholders were dependent on the skill and efforts of City Savings in making sound loans because Illinois law tied the payment of dividends on withdrawable capital shares to an apportionment of the profits. *See* 389 U.S. at 339–339, 88 S.Ct. at 554, 19 L.Ed. 2d at 570. And throughout the opinion, the Court emphasized the investment character of the scheme.[8] Again, it is this characteristic which we have re-

7. We quote, in full, the district court's analysis:

"In the opinion of the court, under plaintiffs' claim both the deposit transactions and the loan transactions would be purchases or sales of securities within the meaning of section 3(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10), section 10(b) of that act and rule 10b–5. *As to certificates of deposit, see:* Tcherepnin v. Knight, 389 U.S. 332, 344, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); Bromberg, Securities Law, *supra,* § 4.-6(312), (373). *But see* S.E.C. v. Fifth Avenue Coach Lines, Inc., 289 F.Supp. 3, 38 (S.D.N.Y.1968) (dictum), aff'd 435 F. 2d 510 (2d Cir. 1970), questioned in Zeller v. Bogue Electric Manufacturing Corp., *supra* at 93,621 [cite to CCH] ("[t]he district court opinion contains dicta with which we would not agree, see 289 F. Supp. 3, 38 [S.D.N.Y.1968]"). *As to short term promissory notes, see:* Zeller v. Bogue Electric Manufacturing Corp.,

*supra*; Sanders v. John Nuveen & Co., 463 F.2d 1075 (7th Cir.), cert. denied, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972); Bromberg, Securities Law, *supra,* § 4.6(371). *But see* S.E.C. v. Fifth Avenue Coach Lines, Inc., *supra,* 289 F.Supp. at 38 (dictum), questioned in Zeller v. Bogue Electric Manufacturing Corp., *supra* at 93,621; L. Loss, 1 Securities Regulation 546 (1969)" (footnotes omitted). 360 F.Supp. at 495–496.

8. The court in Tcherepnin v. Knight, *supra,* relied extensively upon SEC v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) and SEC v. C. M. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L. Ed. 88 (1943). The definition of an investment contract, formulated in *Howey,* emphasizes the investment nature of an enterprise. The Court stated that "[t]he test is whether the scheme involves an *investment* of money in a common enterprise with *profits* to come solely from the efforts of others."

peatedly found absent in the transactions between the First National Bank of Hereford and the Bellahs. Accordingly, we fail to discern how Young v. Seaboard Corp., *supra*, adds force to the Bellahs' contention. Thus, on the basis of the arguments presented on this appeal, we conclude that the certificate of deposit is not a security.

### III

To reiterate, we hold that the note and ancillary deed of trust executed by the Bellahs to the Bank is commercial and not investment paper and hence is not embraced by the Securities Exchange Act of 1934. We also conclude that the argument pressed upon us with respect to the certificate of deposit is similarly inefficacious. To this extent, the district court's order is affirmed.

We do not believe, however, that the Bellahs' complaint should be dismissed with prejudice in its entirety. Although not through any fault of the district court, it would appear that the Bellahs may not have had a plenary opportunity to ventilate their claims concerning the certificate of deposit. The arguments which have been presented on appeal have been categorically rejected. And because of the essential commercial nature of the transactions between the Bellahs and the Bank, we are skeptical of the possibility that any additional light which could be shed on this matter would warrant a conclusion contrary to that which we have reached. Nevertheless, lest their rights be forsaken in any respect by the limited review of their certificate of deposit contention, we shall not foreclose them from an opportunity to pursue that theory of liability in the district court, if they are able and inclined to do so. Accordingly, we affirm the dismissal of the complaint, except to the extent that the dismissal was

with prejudice as to the certificate of deposit. In all other respects the judgment of the district court is affirmed.

Modified and affirmed.

SEC v. W. J. Howey & Co., 328 U.S. at 301, 66 S.Ct. at 1104, 90 L.Ed. at 1251 (Emphasis added). And in SEC v. C. M. Joiner Leasing Corp., 320 U.S. at 351, 64 S.Ct. at 123, 88 L.Ed. at 93, the Court defined the reach of the Securities Act of 1933 "to include by name or description many documents in which there is common trading for *speculation* or *investment*." (emphasis added).