In the Matter of Henry C. ATKEISON, Jr., d/b/a Ambassador Church Finance/Development Group, Inc. and d/b/a Atalbe Christian Credit Association, Inc.

### SECURITIES AND EXCHANGE COMMISSION

v.

### AMBASSADOR CHURCH FINANCE/DEVELOPMENT GROUP, INC. and Henry C. Atkeison, Jr.

#### Claim of Geraldine BURNS.

#### No. 74–471–NA–CV.

United States District Court, M. D. Tennessee, Nashville Division.

Dec. 1, 1977.

E. Warner Bass, Bass, Berry & Sims, Nashville, Tenn., for Fred D. Bryan, Trustee.

Theodore H. Focht, Gen. Counsel, Wilfred R. Caron, Associate Gen. Counsel, Michael E. Don, Sr., and Martin F. McMahon, Attys., Washington, D. C., for Securities Investor Protection Corp.

Robert L. Trentham, Nashville, Tenn., for claimant Geraldine Burns.

## MEMORANDUM

MORTON, Chief Judge.

This claim arose in a lengthy and complex liquidation proceeding under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa–lll [hereinafter "the Act"]. Sections 78eee(b) and 78fff of the Act provide for such proceedings for the liquidation of insolvent securities broker-dealers in lieu of, but essentially the same as, proceedings under Chapter X of the Bankruptcy Act, 11 U.S.C. §§ 501, et seq. Enacted in the wake of increased stockbroker failures in 1969 and 1970, the Act ("SIPA") created the Securities Investor Protection Corporation ("SIPC") for the purpose of protecting the customers of broker-dealers from losses occasioned by such failures. SIPC is directed to advance to the trustee in liquidation proceedings under the Act "such moneys as may be required . . . to satisfy claims in full of each customer" up to $50,000, or up to $20,000 for a customer's claim to cash. 15 U.S.C. § 78fff(f).

The issue presented by this claim is whether the claimant Burns is a customer of the debtor Atkeison and is thereby entitled to protection under the Act. In 1973 claimant purchased two "8% investment certificates" for $6,000 each from the Atalbe Christian Credit Association, Inc. (hereinafter "Atalbe"), a corporation formed for the purpose of making loans to bond purchasers. According to prospectuses furnished to claimant by Atalbe, her investment was to have been used by the corporation to defray the costs of organizing the company and to make "installment loans to individuals desiring to purchase religious institutional bonds." Atalbe was one of two corporations found by this court to be alter egos of the debtor by order of January 16, 1975. The other corporation, Ambassador Church Finance/Development Group, Inc., was a broker-dealer registered with the Securities and Exchange Commission and a member of SIPC. After creditors of the debtor filed for liquidation, SIPC applied for and received from this court an adjudication that customers of the defendant broker-dealer were in need for protection under the Act. (Order of December 12, 1974.) Mrs. Burns filed a timely claim for SIPC protection in the amount of $12,240 (her initial investment of $12,000 plus unpaid interest). The trustee determined that claimant is not a "customer" of the debtor and is therefore not entitled to SIPC funds. She appeals to this court.

Section 78fff(c)(2)(A)(ii) of the Act defines "customers" as

. . . persons (including persons with whom the debtor deals as principal or agent) who have claims on account of securities received, acquired, or held by the debtor from or for the account of such persons (I) for safekeeping, or (II) with a view to sale, or (III) to cover consummated sales, or (IV) pursuant to purchases, or (V) as collateral security, or (VI) by way of loans of securities by such persons to the debtor, and shall include persons who have claims against the debtor arising out of sales or conversions of such securities, and shall include any person who has deposited cash with the debtor for the purpose of purchasing securities, but shall not include any person to the extent that such person has a claim for property which by contract, agree-

ment, or understanding, or by operation of law, is part of the capital of the debtor or is subordinated to the claims of creditors of the debtor.

Both the trustee and SIPC assert by way of memoranda that claimant fails to fit this definition for several reasons, among them that her claim is clearly not for securities "received, acquired or held by" the debtor; that if her claim could be said to be one for cash deposited with the debtor, it was not "deposited for the purpose of purchasing securities;" and that in any event her claim is for property that was part of the capital of the debtor. Because the court agrees with the first and second of these contentions it need not reach the issue presented by the third, nor need it consider other issues briefed by the parties, such as whether claimant's property is "specifically identifiable" under section 78fff(c)(2)(C).

■ The legislative history of SIPA as well as the language of section 78fff(c)(2)(A)(ii) quoted above make it plain that the Act is designed to protect customers who "have either cash or securities or both in the custody of broker-dealer firms." H.R.Rep. No. 91–1613, 91st Cong., 2d Sess., reprinted in [1970] U.S.Code Cong. & Admin.News, pp. 5254, 5255 [hereinafter cited as *House Rep., U.S.C.C. & A.N.*]; *see S.E.C. v. Guaranty Bond & Securities Corp.,* 496 F.2d 145, 147 (6th Cir. 1974). In determining to protect cash, Congress' attention was focused on customer's "free credit balances." *Securities Investor Protection: Hearings on H.R. 19333 Before the Subcomm. on Commerce and Finance of the House Comm. on Interstate and Foreign Commerce,* 91st Cong., 2d Sess. 150, 166 (1970) (statements of Hamer H. Budge and Ralph D. DeNunzio) [hereinafter cited as *House Hearings*]; *Federal Broker-Dealer Insurance Corporation: Hearings on S.R. 2348 Before the Subcomm. on Securities of the Senate Comm. on Banking & Currency,* 91st Cong., 2d Sess. 142 (1970) (statement of Sen. Edmund Muskie) [hereinafter cited as *Senate Hearings*]. As stated in the House Report, "free credit balances are funds left with a broker-dealer firm by customers who have an unrestricted right to withdraw them on demand. This money . . . is left on deposit with the broker largely as a convenience." House Rep., U.S.C.C. & A.N. at 5255. Such accounts typically arise in four situations:

First, the customer may have deposited cash with his broker-dealer in anticipation of making a purchase. Secondly, the broker-dealer may have retained the cash proceeds from the sale of a customer's securities, either on express instructions from the customer or because the customer has failed to give instructions for the deposition of the proceeds. Thirdly, the broker-dealer may have retained interest or dividends that have been paid on a customer's securities that the broker-dealer holds in street name. Finally, a margin customer [one who buys securities on credit collateralized with a "margin" amount] may have deposited cash with a broker-dealer in excess of margin requirements.

Note, *The Securities Investor Protection Act of 1970: A New Federal Role in Investor Protection,* 24 Vand.L.Rev. 586, 587–88 (1971). The securities held for a customer by the broker-dealer may be fully paid for, in which case the customer has an unrestricted right to receive them on demand, but in the meantime they are subject to "the inevitable risk that they may be transferred improperly or may be reached by creditors of the broker-dealer if the difficult and technical legal requirements of 'segregation' are not observed." *House Rep.,* U.S.C.C.&A.N. at 5256. Broker-dealers also hold margin securities, which are not fully paid for and which may be pledged by the broker as collateral for bank loans. *Id.*

■ In determining the nature of claimant's status in relationship to the debtor, and thereby to SIPC, the court must look to matters as they existed on November 7, 1974, the filing date of this liquidation proceeding. *See* 15 U.S.C. § 78eee(b)(4)(B); *SEC v. Aberdeen Securities Co.,* 480 F.2d 1121, 1123–24 (3d Cir. 1973). It is stipulated that the investment certificates pur-

chased by Mrs. Burns are now and were as of the filing date in the custody of Mrs. Burns herself. Therefore, she could qualify as a customer only if, as she contends, the debtor held cash belonging to her.

■ On November 7, 1974, claimant was in possession of Atalbe's check payable to her in the amount of $240.00, representing the semiannual interest payment on one of the certificates. This interest, however, was not due to be paid until January 1, 1975, and the check was postdated to that date. Thus it cannot be said that the cash represented by this check belonged to claimant or corresponded in any way to the free credit balances Congress intended to insure. There is, nevertheless, some authority in support of claimant's contention that her original $12,000 investment, or at least a portion thereof, was itself "cash deposited with the debtor," and that her investment certificates merely represented this cash. Each of the certificates issued to claimant state that "Six thousand dollars ($6,000.00) has been deposited with Atalbe. . . ." It is stipulated that of the $12,-000.00 paid by the claimant for the two certificates, $9,935.00 was in cash, the remaining $2,065.00 in matured bonds and interest coupons. In *Bellah v. First National Bank,* 495 F.2d 1109 (5th Cir. 1974), it is stated that certificates of deposit issued in exchange for currency are not encompassed within the definition of "securities" provided in section 78c(a)(10) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, et seq., "because currency is not a security." 495 F.2d at 1114. Section 78c(a)(10) (emphasis added) provides:

The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, *certificate of deposit, for a security,* or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

This definition is controlling in the instant case by virtue of 15 U.S.C. § 78bbb, which incorporates the Securities Investor Protection Act of 1970 into the Securities Exchange Act of 1934.

If the certificates held by claimant are not securities, as *Bellah* might seem to suggest, then it would follow that she had "cash deposited with the debtor." If they are securities, then she has already received the benefit of her bargain, albeit a bad one, for she has the securities themselves. *See SIPC v. Associated Underwriters, Inc.,* 423 F.Supp. 168, 171, 180 (D.Utah 1975) (claimant entitled only to return of worthless securities issued and held by the debtor).

■ Of course, the investment certificates at issue need not qualify as all of the items listed in section 78c(a)(10) in order to be securities. *See Tcherepnin v. Knight,* 389 U.S. 332, 344, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). Even though they may not be certificates of deposit issued for securities, they may nonetheless be regarded as "debentures," see 4A *Cavitch, Business Organizations* § 91.02[3] (1976), or even more clearly as "investment contracts." The well-accepted test for an investment contract is whether there is an "investment of money in a common enterprise with profits to come solely from the efforts of others." *See, e.g., Tcherepnin v. Knight, supra,* 389 U.S. at 338, 88 S.Ct. at 554 (quoting *SEC v. W. J. Howey Co.,* 328 U.S. 293, 299, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946)). The *Bellah* court, *supra,* in finding the certificates of deposit in that case not to be securities, discussed *Tcherepnin* and stated that "throughout the opinion, the [*Tcherepnin*] Court emphasized the investment character of the scheme. . . . [I]t is this charac-

teristic which we have repeatedly found absent in the transaction between the [bank] and the Bellahs." 495 F.2d at 1115–16. (The certificates in *Bellah* had been issued as part of a rather involved transaction centered around a loan from the bank to the Bellahs.) In the instant case there can be no doubt that the claimant's "deposit" was made as an investment whereby she intended to earn a profit solely from efforts made by others. Therefore, the transactions between Burns and Atalbe meet the *Howey* test for investment contracts, and these in turn, are designated as securities in section 78c(a)(10).

██ Yet even if claimant could be said to have deposited cash with the debtor, it was not deposited "for the purpose of purchasing securities" within the meaning of section 78fff(c)(2)(A)(ii). Claimant insists that her property does meet this requirement because her investment was to have been used by Atalbe for the purpose of making loans to purchasers of securities. It would stretch the language of the statute unacceptably thin to interpret it to encompass this situation, especially in light of the legislative history. It is the relationship between the claimant and the debtor that determines the claimant's status for purposes of SIPA protection. In this case, claimant has not deposited money for the purpose of purchasing securities for herself as would a "customer" as contemplated by Congress when it enacted SIPA.

██ This court holds that claimant is not a customer of the debtor because she had not entrusted securities to the debtor, and she had not left cash with the debtor for the purpose of purchasing securities. Therefore she is not entitled to protection under the Act.

As stated at the outset, the court need not reach the question of whether claimant's property, which might otherwise have qualified her for SIPA protection as a customer of the debtor, cannot do so because it is "part of the capital of the debtor." 15 U.S.C. § 78fff(c)(2)(A)(ii). Nevertheless, the court would like to state that it deliberately declines to make a determination on this point as an alternative ground for its decision. The resolution of the question is not nearly so clear as SIPC and the trustee assert or as it initially appeared to this court. SIPA's legislative history is devoid of any direct discussion of this portion of section 78fff(c)(2)(A)(ii). Both SIPC and the trustee emphasize that the uses to which claimant's money was to be put are those normally associated with capital. It is plain, however, that Congress did not seek to deny reimbursement of money by SIPC merely because it was *used* as capital. Congress was well aware that free credit balances, unquestionably protected by the Act, "may be and are used by broker-dealers to maintain positions in securities, to finance margin purchases of other customers, and to operate their businesses generally." *House Rep.*, U.S.C.C. & A.N. at 5255; House Hearings at 150 (statement of Hamer H. Budge); *see Senate Hearings* at 142 (statement of Sen. Edmund Muskie). What seems more likely is that Congress sought to prevent persons with a proprietary interest in the debtor's business *from recovering* from SIPC funds. This concern is manifested elsewhere in the Act. *See* 15 U.S.C. §§ 78fff(f)(1)(C) and 78fff(h). To the extent that the term capital connotes a measure of control over or ownership in the business, claimant's property in this case did not constitute capital. Nonetheless, "The word [capital] may have different meanings when used in different connections," Black's Law Dictionary 262 (Rev. 4th ed. 1968), and among its many and various definitions are those which do encompass investments such as claimants. *See, e.g., Brown Shoe Co. v. Commissioner of Internal Revenue*, 339 U.S. 583, 590, 70 S.Ct. 820, 823, 94 L.Ed. 1081 (1950) ("Treasury Regulations have consistently recognized that contributions to capital may originate with persons having no proprietary interest in the business.") Given the complexity of the issue and the absence of indications of congressional intent, it behooves this court to leave this question to another forum or at least to another day when its resolution is demanded by the facts before the court.

In holding that the claimant is not a customer of the debtor because she had not entrusted securities to the debtor and because her cash deposited with the debtor, if any, was not deposited for the purpose of purchasing securities, this court sustains the decision of the trustee. An appropriate order will be entered.