**BACHE HALSEY STUART, INC.**

v.

**AFFILIATED MORTGAGE INVESTMENTS, INC., et al.**

No. C76–272A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 20, 1977.

---

Thomas Shelton and Thomas Harney, Atlanta, Ga., Kilpatrick, Cody, Rogers, McClatchey & Regenstein, for plaintiff.

Foy R. Devine, Fierer & Devine, Atlanta, Ga., for defendants.

## ORDER

MOYE, District Judge.

This is an action for violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5 promulgated thereunder. The case is before the Court for the second time on the plaintiff's motion for judgment on the pleadings as to Count IV of the defendant's counterclaim.

The issue presented for resolution at this time is whether or not certain contracts entered into by the parties for the purchase of mortgage-backed certificates guaranteed by the Government National Mortgage Association (GNMA certificates) for delivery at a stated time in the future were securities required to be registered by section 5 of the Securities Act of 1933, 15 U.S.C. § 77e. When the issue was first presented, the Court requested briefs from the parties and from the Securities and Exchange Commission (SEC) concerning the issue at hand. The GNMA Mortgage-Backed Securities Dealers Association (Dealers Association) requested and was granted leave to file a brief amicus curiae on the issue as well. The Court now has before it the briefs of the parties and the Dealers Association. The SEC has declined to file an amicus brief.

The instruments in question are certificates, each representing a share in a pool of mortgages insured by various federal agencies, payable at a fixed rate of interest. The certificates are transferable, and those instruments bearing the same interest rate are fully fungible. The certificates are issued in a minimum denomination of $25,000 and are sold in amounts of not less than $1 million. The certificates sold in the transactions at issue are modified pass-through securities issued in pools of single family home mortgages, meaning that the issuer is obliged to transmit a pro rata share of monthly interest and principal payments to the security holder, whether or not such payments have been made. The interest and principal payments are guaranteed by GNMA and are backed by the full faith and credit of the United States government. The securities are issued by mortgage bankers who assemble the pools of mortgages for sale to broker-dealers such as the plaintiff, banks, savings and loan associations, credit unions, and other thrift institutions. Purchase by an individual investor is rare.

The usual sale of a modified pass-through GNMA security provides for delivery of the certificate and payment on a specified date some 30 to 180 days after the negotiation of the sale. The purchaser may elect to take delivery of the security and make payment for it on the specified date or may sell it at any time prior to delivery. No payment is required until the date of delivery. The time lag between negotiation of the price and date of delivery and the actual delivery of the certificate is a necessary result of the mortgage broker's unwillingness to advance the large sums of money required to originate mortgages without the assurance of a ready market for the mortgage pools.

The risks of entering into a sale for future delivery are, first, that a purchaser may speculate without having the present

ability to pay the cash price or deliver the security; and second, that the purchaser bears a risk that the value of the security may decline substantially between the time the sale is entered into and the date of delivery. This latter risk of decrease in value, however, would be borne equally by a purchaser who took immediate delivery of the certificate.

The defendants contend that the delayed delivery aspect of the transactions in question transforms each agreement into a contract which falls within the definition of an investment contract as established in *S.E.C. v. W. J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). The defendants claim that the risks assumed by the parties to the delayed delivery contracts necessitate the protection afforded by registration. The defendants also urge that for the purposes of the motion, its allegation that the delayed delivery aspect of the transactions constituted a separate contract must be taken as true, and the Court may not look behind the defendants' answer and counterclaim.

The plaintiff argues that the forward delivery aspect of the GNMA certificate sales is not a separate contract and need not be registered. Bache states further that even if a separate contract is found, the test set out under the *Howey* case, *supra*, leads to the conclusion that the contract is not an investment contract which must be registered. Finally, Bache and the amicus Dealers Association argue strenuously that the requirement of registration would impose a ponderous burden on the sales of GNMA certificates, would result in the issuance and sale of fewer certificates, and would therefore have a deleterious effect on the entire housing industry.

The Court notes first that it is not bound by the defendants' assertion that two contracts were involved in each sale of the GNMA certificates—one contract for the sale of the certificate itself, which all parties agree is a transaction exempt from the registration requirement under section 3(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77c(a)(2), and the second contract providing for delayed delivery. The defendants' bare assertion that the agreement of delayed delivery is a contract is a legal conclusion and is not deemed admitted for purposes of the instant motion. *See* 2A J. Moore, *Federal Practice* ¶ 12.15, at 2343. The Court, therefore, must make an independent determination on the issue.

The Court notes first that the transactions in question must be distinguished from sales of GNMA futures contracts which are presently being traded on the Chicago Board of Trade. The Board of Trade transactions are highly standardized; the futures contracts are sold at auction, with the only open term in the transaction being the price. Delivery is very rarely taken in such transactions. In the forward contracts under consideration, the parties negotiate all the terms of the sale, including the interest rate, date of delivery, and price, and the purchaser most often takes actual delivery of the underlying certificate. Transactions involving futures contracts require the participation of a clearing house which buys from the seller and sells to the buyer; forward contracts, or contracts for delayed delivery, are negotiated directly between the buyer and seller, and no third party is ever involved. Futures contract trading may be carried on through a discretionary account managed by a broker-dealer; the forward contracts involved here require party-to-party negotiation. The current dispute between the SEC and the Commodities Futures Trading Commission (CFTC) concerns jurisdiction over futures contracts trading and possible registration and does not bear on the issue presently before the Court. Nothing in this order relates to the trading or registration of futures contracts on GNMA certificates.

▆▆ The Court finds that the sales of GNMA certificates for future delivery do not require registration. The GNMA certificates are specifically exempted from registration as securities guaranteed by the United States, 15 U.S.C. § 77c(a)(2). Section 2(3) of the Securities Act provides that "[t]he term 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security, for value." 15 U.S.C. § 77b(3). The contracts for sale of the GNMA certificates in this case included provisions naming the price, interest rate,

and date of delivery and payment for the securities. The definition of the sale of securities under the Securities Act indicates that a single contract was present in this case; the parties did not engage in the sale of a contract to sell a security. The deposition of defendant Lewis indicates clearly that the parties contemplated only the sale of the securities themselves in their entire course of dealing. Cases analogous to this have established that agreements for delivery and payment in the future do not transform sales of specified commodities into securities contracts. *Berman v. Dean Witter & Co., Inc.*, 353 F.Supp. 669, 671 (C.D. Cal.1973); *Sinva, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 253 F.Supp. 359, 366 (S.D.N.Y.1966). The fact that the underlying commodity in this case is itself a security does not change this result.

The defendants urge that registration is necessary for the protection of investors in GNMA certificates who are able to make substantial commitments of funds and take large risks without putting up either cash or certificates. The defendants fail to show, however, that registration would change any of the possibilities for speculation. The amount of speculation inherent in an investment is immaterial to a determination of whether or not the investment is a security. *Tcherepnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). Neither will registration change the risk incurred as a result of fluctuating interest rates.

Bache and the amicus Dealers Association show clearly that the registration process would impose a severe burden on the issuers of GNMA certificates and that the impact of such a requirement would be felt throughout the housing industry. Though such an argument is not determinative, the Court notes that in *Bellah v. First National Bank*, 495 F.2d 1109 (5th Cir. 1974), the Court of Appeals for the Fifth Circuit was persuaded in an analogous situation that certain commercial paper need not be registered where registration "would . . . wreak havoc on the . . . market." *Id.* at 1114. The finding in *Bellah* that registration was not required appears equally applicable here.

Further support for the plaintiffs' argument is found in *S.E.C. v. Winters Gov't Securities Corp.*, No. 77–6345 (S.D.Fla. filed August 15, 1977), in which the SEC seeks to enjoin fraudulent dealings in connection with the sale for forward delivery of modified pass-through GNMA certificates such as are involved in the present case. The SEC has made no allegation in the *Winters* case that the forward delivery aspect of the questioned sales subjects the sales to a registration requirement. The SEC is suing only under the fraud provisions of the 1934 Act and has made no suggestion that contracts for forward delivery requiring registration are at issue.

For these reasons, the Court finds that the sales involved in this case were solely sales of exempt GNMA certificates and not sales of contracts to deliver at a future date. Therefore, the defendants' argument that the contracts for forward delivery constituted investment contracts need not be considered. No transaction requiring registration of a security is presented by the instant facts. Accordingly, the plaintiff's motion for judgment on the pleadings on Count IV of the defendants' counterclaim is hereby GRANTED.