FIRST STATE BANK OF WHEATLAND, (formerly American National Bank of Wheatland); and American National Bank of Laramie, Plaintiffs,

v.

AMERICAN NATIONAL BANK (Cheyenne), John Doe I, John Doe II, John Doe III, John Doe IV, and John Doe V, Defendants.

No. C88–0071J.

United States District Court, D. Wyoming.

July 25, 1988.

John B. "Jack" Speight, Cheyenne, Wyo., for plaintiffs.

David H. Carmichael, Cheyenne, Wyo., for defendants.

## ORDER RULING ON MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION TO DISMISS

JOHNSON, District Judge.

Plaintiffs bring this action under the federal security laws and seek redress for losses they sustained from having advanced funds under a loan participation agreement arranged by defendant, American National Bank of Cheyenne. According to the complaint, the defendant, American National Bank of Cheyenne, arranged an $800,000 loan to one of its customers, Shirley Brown, by selling fractional interests in the loan to other banks owned by the American Bank Corporation, which at that time included plaintiff banks. Defendant arranged the loan as part of a plan whereby Brown would repay an $800,000 loan to Denver National Bank, which loan was secured by a $1,000,000 certificate of deposit. Upon repaying her loan, Brown redeemed the certificate of deposit and used its proceeds to purchase shares in American Bank Corporation. Plaintiffs assert that the $800,000 loan was used by Brown to capitalize a newly chartered bank in Evanston, Wyoming.

Plaintiffs each purchased a $100,000 participation in the $800,000 loan for which they received a "certificate of participation." Additional $100,000 shares were purchased by other participating banks, so that the entire $800,000 loan was funded by banks other than by defendant. Defendant acted solely as a "lead bank" in the loan transaction to Brown.[1] The loan arranged

---

1. Loan participations are popular credit mechanisms whereby funds for a loan are obtained from several lenders. A lead bank arranges the loan and sells participations to other banks.

by defendant was dated October 23, 1984, and had a relatively short maturity date of June 1, 1985.

The loan in which plaintiffs participated was evidenced by a $750,000 promissory note secured by a deed of trust encumbering a 14–acre parcel of commercial real estate valued at $2,558,000. The note and deed of trust was assigned to defendant as security by Radiant Energy Systems, Inc., which had originally taken the note and the deed of trust from Isla Del Rey, Ltd. as security for a loan it had earlier made to Isla Del Rey. Both entities were owned by Shirley Brown.

In January 1985, defendant made a $600,000 loan to Brown and received as security a second assignment of the note and deed of trust originally executed by Isla Del Rey in favor of Radiant Energy Systems. However, because the $750,000 note and deed of trust already secured the participating banks' $800,000 loan to Brown, defendant's $600,000 loan to the same debtor was essentially unsecured. Soon after making this loan, defendant discovered that Brown was experiencing financial difficulties. Realizing that its unsecured position on the $600,000 loan was compounded by Brown's financial difficulties, defendant devised a scheme whereby it would combine its loan with the first loan and then request that the participating banks renew their participation in the first loan. Thus, by combining its unsecured loan with the participants', the collateral securing the $800,000 loan would be substantially diluted.

The participating banks agreed to defendant's request that they renew their participation. Although plaintiffs signed these renewal participations, they allege they failed to discover that defendant combined the original $800,000 secured loan with its $600,000 unsecured loan. After renewing their participation, Brown defaulted on her loan and defendant foreclosed on the diluted security, resulting in a loss to the plaintiffs. Brown filed a petition in bankruptcy on July 20, 1987. Plaintiffs allege that defendant defrauded

them by concealing, among other things, the increased credit to Brown as well as her financial instability.

On these facts, plaintiffs filed this action, asserting two claims for relief under the fraud provisions of the Securities Act of 1933, Pub.L. No. 577, § 9, 68 Stat. 683, 686 (1954) (codified as amended at 15 U.S.C. § 77*l*; the Securities and Exchange Act of 1934, Pub.L. No. 291, § 10, 48 Stat. 881, 891 (1934) (codified at 15 U.S.C. § 78j); and 17 C.F.R. § 24.10b–5. Plaintiffs also assert seven pendent state law claims.

On May 16, 1988, defendant filed a Motion for Judgment on the Pleadings and to Dismiss, which motion came before the court for hearing on June 3, 1988. In its motion, defendant asserts that this court lacks jurisdiction over the subject matter because the certificates of participation were not securities as defined under the federal securities laws. Although defendant brought its motion pursuant to Fed.R. Civ.P. 12(c) and 12(b)(6), the court shall treat the motion as one for summary judgment because the parties have presented matters outside the pleadings, which the court has considered in deciding defendant's motion. *See, e.g., Franklin v. Oklahoma City Abstract and Title Company,* 584 F.2d 964, 967 (10th Cir.1978). ("[w]hen matters outside the pleadings are presented and not excluded the court must treat the motion as one for summary judgment and proceed under Rule 56."). On June 23, 1988, the court entered an order notifying the parties of its intent to convert defendant's motion to one under Rule 56. In that order, the court provided the parties ten days to file pertinent materials in support of and in opposition to defendants' motion. On July 8, 1988, plaintiffs submitted five affidavits in opposition to defendant's motion.

■ Under Rule 56(c) summary judgment is proper, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits on file, if any, show that there is no genuine issue as to any material fact and

*See McVay v. Western Plains Corporation,* 823 F.2d 1395, 1399 (10th Cir.1987).

that the moving party is entitled to summary judgment as a matter of law." The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed. 2d 142 (1970). However, once the moving party has met its initial burden, the burden shifts to the non-moving party to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To discharge its burden, the non-moving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Celotex*, 106 S.Ct. at 2554. For reasons discussed below, the court will grant summary judgment in defendant's favor.

Section 2(1) of the Securities Act of 1933, 15 U.S.C. § 77b(1), defines a security in relevant part as follows:

(1) The term "security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

The definition of a security in section 3(a)(10) of the Securities Exchange Act of 1934 similarly defines security and the two definitions have been held to be virtually identical. *United Housing Foundation v. Foreman*, 421 U.S. 837, 847 n. 12, 95 S.Ct. 2051, 2058 n. 12, 44 L.Ed.2d 621 (1975). However, "in searching for the meaning and scope of the word 'security' in the Act[s], form should be disregarded for substance and the emphasis should be on economic reality." *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). Thus in searching for the meaning of security, the court must apply these statutes so that they "turn on the economic realities underlying the transaction, and not on the name appended thereto." *Foreman*, 421 U.S. at 849, 95 S.Ct. at 2059.

Under *Securities and Exchange Commission v. W.J. Howey*, 328 U.S. 293, 298, 66 S.Ct. 1100, 1102, 90 L.Ed. 1244 (1946) four elements are required for a security: (1) an investment of money, (2) in a common enterprise, (3) premised upon a reasonable expectation of profit, (4) to be derived from the entrepreneurial efforts of others. *See also McGill v. American Land Exploration Company*, 776 F.2d 923, 924 n. 1 (10th Cir.1985). These four elements comprise the *"Howey* test" and in applying it the court must ascertain, as previously noted, the "economic reality" underlying a transaction. *McGill*, 776 F.2d at 925. A purely commercial transaction, such as a commercial loan or a sale of assets, does not constitute a security. Only a transaction that is in reality an investment "creates a 'common enterprise' and gives rise to a 'security' within the ambit of the 1933 and 1934 Securities Acts." *McGill*, 776 F.2d at 924. The test for distinguishing between commercial and investment transactions is "'whether the transaction is of the kind in which stock often actually is given.'" *Zabriskie v. Lewis*, 507 F.2d 546, 551 (10th Cir.1974) (quoting Comment, *Commercial Notes and Definition of "Security" under Securities Exchange Act of 1934: A Note Is a Note Is a Note?*, 52 Neb.L.Rev. 478, 501 (1972)).

Under *Howey*, the first element of a security is the presence of an investment. Accepting as true all well-pleaded material

factual allegations and construing all inferences in plaintiff's favor, the complaint establishes that plaintiffs were obligees under loan obligations evidenced by a certificate of participation and a promissory note, which initially was adequately secured by a first deed of trust on commercial real estate valued at $2,558,000. The presence of an adequately secured promissory note indicates that the transaction was nothing more than a commercial loan. Although the security was later diluted, this factor is immaterial, "since the nature of an instrument is to be determined at the time of issuance, not at some subsequent time." *Great Western Bank and Trust v. Kotz*, 532 F.2d 1252, 1255 (9th Cir.1976). The short maturity date of the original loan— approximately seven months—is further indicium that this transaction was not an investment. *See, e.g., American Fletcher Mortgage Company, Inc. v. U.S. Steel Credit Corporation*, 635 F.2d 1247, 1254 (7th Cir.1980), *cert. denied, U.S. Steel Credit Corporation v. American Fletcher Mortgage Company, Inc.*, 451 U.S. 911, 101 S.Ct. 1982, 68 L.Ed.2d 300 (1981) (loan obligations evidenced by secured promissory note of three-year maturity date constitute a collateralized commercial loan, not an investment). In exchange for their participation, plaintiffs were to receive nothing more than a return of principal plus interest, not dividends. Based on these facts, the court finds that this was not a " 'transaction of the kind in which stock often actually is given.' " *Zabriskie*, 507 F.2d at 551 (citation omitted). The court therefore must conclude that the transaction in issue fails to satisfy the first element under *Howey*.

The test under *Howey* also requires that there be a common enterprise. In determining whether a common enterprise exists, the court looks at the economic reality underlying the transaction. Under the rule in the Tenth Circuit, transactions such as a commercial loan do not give rise to a common enterprise. *McGill*, 776 F.2d at 925. Having found that plaintiff's purchases of the certificates of participation constituted a commercial loan, the court concludes that the transaction did not create a common enterprise as required under *Howey*.

The court further finds that the loan participation agreements do not satisfy the third and fourth elements of a security. Under *Howey*, the third element requires that there be a reasonable expectation of profits. In *Foreman*, 421 U.S. at 852, 95 S.Ct. at 2060, the Supreme Court defined profits as "capital appreciation resulting from the development of the initial investment. . . ." In the instant case, the rate of return that plaintiffs expected was fixed in their respective participation agreements at one percent over the floating City Bank rate. The certificates of participation could not appreciate in value because the plaintiffs' expected return was simply the repayment of principle plus a fixed rate of interest. Plaintiffs' receipt of interest was therefore "not directly tied to profitability in such a way as to make [the] loan participation agreements securities." *McVay*, 823 F.2d at 1399. *See also United Planners National Bank of Memphis v. Commercial Credit Business Loans, Inc.,* 651 F.2d 1174, 1185 (6th Cir.), *cert. denied*, 454 U.S. 1124, 102 S.Ct. 972, 71 L.Ed.2d 111 (1981) (interest earned on certificates of participation do not constitute a reasonable expectation of profit as used in the *Howey–Foreman* securities context); *American Fletcher Mortgage Company*, 635 F.2d at 1254 ("fact that . . . the loan bore interest does not make it a security.").

The fourth element under *Howey* requires that profits be derived from the "entrepreneurial efforts of others." Here the interest income expected by plaintiffs was to be derived from the efforts of Brown in her attempt to form a new bank. Although American National Bank of Cheyenne performed certain administrative tasks with respect to the loan, these tasks were not entreprenurial within the meaning of the *Howey* test. *United Planners National Bank*, 651 F.2d at 1185. The "economic reality" underlying this transaction requires that this court hold that the loan participation agreements were not securities within the intent of the federal securities laws. This holding is consistent with *McVay*, 823 F.2d at 1399 n. 4, where the

tenth circuit found that certificates of participation are not securities because they "lack the basic attributes of true stock." The court therefore will grant summary judgment in favor of defendant.

In their brief, plaintiffs rely on *Lehigh Valley Trust Company v. Central National Bank of Jacksonville,* 409 F.2d 989 (5th Cir.1969) for the proposition that "the plain language of the definition of a security under [the federal securities laws] creates a presumption that loan participations are securities...." Plaintiffs' Brief at 3. In *Lehigh Valley,* the Fifth Circuit read the federal security laws literally to find that a loan participation agreement was "clearly within the statutory definition of a security as that definition includes 'any certificate of interest or participation in ... any of the foregoing [note, stock, etc.].' " 409 F.2d at 992. Although the statutory definition of a security literally includes a certificate of participation, the Fifth Circuit later rejected a literal application of the federal security laws in *Bellah v. First National Bank,* 495 F.2d 1109 (5th Cir.1974). In *Bellah,* the court stated that a transaction's status as a security depends on its nature as being for commercial or for investment purposes. 495 F.2d at 1113–14. This approach is consistent with most of the circuits as well as with the Supreme Court's decision in *Foreman,* where the Court rejected the literal approach on which the plaintiffs rely. *Foreman,* 421 U.S. at 849, 95 S.Ct. at 2059. *See also American National Bank of Nashville v. Gunter,* 620 F.2d 1108, 1115 (5th Cir.1980) (rejection of the literal application of the federal security laws was appropriate particularly in light of the Supreme Court's position in *Foreman* ).

■ Plaintiffs also brought numerous pendent state claims. This court has pendent jurisdiction over an action involving federal and state law claims whenever those claims "derive from a common nucleus of operative facts." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). However, pendent jurisdiction is a doctrine of discretion, which is not to be routinely exercised. *Central National*

*Bank v. Rainbolt,* 720 F.2d 1183, 1187 (10th Cir.1983). In *Gibbs,* the Supreme Court stated that:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a sure-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

383 U.S. at 726, 86 S.Ct. at 1139. *See also Carnegie–Mellon University v. Cohill,* —— U.S. ——, 108 S.Ct. 614, 620, 98 L.Ed.2d 720 (1988) ("when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."). The reasoning in both these cases requires that this court dismiss plaintiff's state law claims without prejudice. *See also Pitts v. Turner and Boisseau,* 850 F.2d 650, 653 (10th Cir.1988) (absent federal question jurisdiction, it is within trial court's discretion to dismiss pendent state claims).

IT IS HEREBY ORDERED that summary judgment is entered in favor of defendant and against plaintiffs on plaintiffs' federal law claims.

IT IS FURTHER ORDERED that plaintiffs' pendent state claims are dismissed without prejudice.