335 F.Supp. 116 (1971)
SAFEWAY PORTLAND EMPLOYEES' FEDERAL CREDIT UNION, a Federal Credit Union, Plaintiff,
v.
C. H. WAGNER & CO., Inc., a Massachusetts corporation, et al., Defendants.
Civ. No. 71-138.
United States District Court, D. Oregon.
December 23, 1971.
Henry A. Carey, Carey & Hanlon, Edward L. Fitzgibbon, William E. Dougherty, Portland, Or., for plaintiff.
William E. Hurley, Bernard, Hurley, Hodges & Kneeland, Portland, Or., for defendants.

OPINION
ALFRED T. GOODWIN, Circuit Judge, Sitting by Designation:
The Safeway Portland Employees' Federal Credit Union (Credit Union), on November 20, 1970, purchased from defendants (Wagner) two one-year Certificates of Deposit of the Sharpstown State Bank. The certificates, of a total *117 face value of $250,000, earned interest at the rate of 7½% per year. Wagner agreed to pay Credit Union an additional 5/8 % interest at maturity.
The Sharpstown bank has closed, and the value of the certificates is in question. Credit Union brought this action for the full face amount of the certificates plus interest. Wagner is willing to pay only the 5/8 % interest which it promised the credit union. Wagner argues that the $250,000 (plus 7½% interest) was owed to the credit union by the bank, not by Wagner.
Credit Union argues that Wagner was engaged in a scheme to sell unregistered investment contracts in violation of Section 5(a) of the Securities Act of 1933 as amended, 15 U.S.C. § 77e(a). Credit Union has moved for summary judgment.
The case is ripe for summary judgment. There is no dispute as to material facts. The record discloses a scheme whereby Wagner would solicit persons to purchase certificates of deposit in various banks, which would thereby obtain funds to lend to substandard borrowers willing to pay high rates of interest. These borrowers were willing to pay Wagner a commission for finding the deposits which made the loans possible. Wagner would then use part of the borrowers' commission or "finder's fee" to pay the extra 5/8 % interest which had been employed to induce purchasers to buy the certificates of deposit offered by the Wagner defendants. The remainder of the borrowers' fees were Wagner's profit. In short, the Wagner group acted as money brokers, and the plaintiff credit union was a source of money.
Wagner does not deny the existence of the scheme. Wagner, however, disputes the inferences the credit union draws, and argues that the certificates were exempt securities under 15 U.S.C. § 77c(a) (2). Therefore, Wagner argues, there was no need to register the scheme or the certificates with the Securities and Exchange Commission under 15 U.S.C. § 77e(a).
Wagner also suggests that the credit union may not be entitled to relief, because it has come into court with unclean hands. Wagner contends that the credit union sought payment of the 5/8 % bonus at the maturity of the certificates, instead of at the time of purchase, in order to circumvent federal credit union regulations. Wagner does not specify the regulations, nor explain why a violation of a credit union regulation should deny the members of the credit union the protection of the securities laws. I find no basis for denying relief under the clean-hands doctrine.
If it is shown from the record (1) that Wagner sold a nonexempt security to plaintiff, (2) that the sale involved the use of interstate transportation or the mails, and (3) that the security was not registered, plaintiff is entitled to summary judgment. Lennerth v. Mendenhall, 234 F.Supp. 59, 63 (N.D.Ohio, 1964).
Here, the record shows the use of the mails (affidavit of E. R. Wieneke). The defendants concede that no registration statement was ever filed. Thus, the only question is whether the scheme is exempt from securities registration, under 15 U.S.C. § 77c(a) (2).
The credit union agrees that certificates of deposit are exempt, but argues that Wagner was selling certificates plus a bonushence, a package which constituted an investment contract. Investment contracts are not exempt. Registration is required. 15 U.S.C. §§ 77b(1); 77e(a).
In S. E. C. v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244, 163 A.L.R. 1043 (1946), the Supreme Court defined an investment contract as:
"* * * a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party *118 * * *." 328 U.S. at 298-299, 66 S.Ct. at 1103.
In S. E. C. v. C. M. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L. Ed. 88 (1943), the Court noted that, in analyzing a scheme to determine whether or not it constitutes an investment contract, the courts should look to the character of the instrument, if any, the terms of the offer, the plan of distribution, and the economic inducements held out to the investor.
"* * * In the enforcement of an act such as this it is not inappropriate that promoters' offerings be judged as being what they were represented to be." 320 U.S. at 353, 64 S.Ct. at 124.
If it were possible to split this transaction into its exempt and nonexempt aspects, thereby requiring registration only of the nonexempt part, then such an approach might be proper under the Supreme Court's ruling in SEC v. United Benefit Life Ins. Co., 387 U.S. 202, 87 S.Ct. 1557, 18 L.Ed.2d 673 (1967). There the Court held that the pre-maturity phase of a "flexible annuity fund" was separable from the post-maturity phase, which was exempt under the "optional annuity contract" exemption of 15 U.S.C. § 77c(a) (8). The Court went on to hold that the pre-maturity phase was an investment contract under the Howey-Joiner rationale, and that such a security required registration.
I do not believe that the Wagner scheme is separable for purposes of registration or exemption under the Act. The defendant-brokers solicit both the certificate purchasers and persons desirous of obtaining loans from the bank. The entire scheme is integrated. The bank and its deposits are at the center of the scheme. The bank's borrower takes the money out as fast as Wagner's investors send it in. In short, to hold that the transaction may be separated into its component parts would create a fiction that would frustrate the intent of Congress in enacting the securities laws and result in an unwarranted windfall to defendants. See, e. g., SEC v. Los Angeles Trust Deed & Mortgage Exchange, D.C., 186 F.Supp. 830 (S.D. Cal.1960), modified on other grounds, 285 F.2d 162 (9th Cir. 1960).
Plaintiff is entitled to judgment. Plaintiff's attorney is requested to prepare and present a proposed form of judgment.
This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).