**In the Matter of duPONT WALSTON INCORPORATED, f/k/a Walston & Co., Inc., Bankrupt.**

**Claim of Federal Deposit Insurance Corporation, as Receiver of United States National Bank, Claimant.**

**Bankruptcy No. 74–B–344.**

United States Bankruptcy Court, S. D. New York.

Jan. 23, 1981.

Hughes, Hubbard & Reed, New York City, for trustee by Emilio Cueto and Barbara Yessel, New York City, of counsel.

Bronson, Bronson & McKinnon, San Francisco, Cal., for Federal Deposit Insurance Corporation by Wilkes R. Morgan, San Francisco, Cal., of counsel.

## OPINION

ROY BABITT, Bankruptcy Judge:

During the unfolding of the bankruptcy process affecting this erstwhile Chapter XI debtor, now a bankrupt under the relevant provisions of the 1898 Bankruptcy Act,[1] the claimant, Federal Deposit Insurance Corporation (FDIC), as receiver of the United States National Bank (USNB), filed a claim for $55,829.88 against the bankrupt's assets. That claim was assigned No. 1624 on the claims register of this court maintained pursuant to Bankruptcy Rule 504(a), 411 U.S. 1055, 93 S.Ct. 3137, 37 L.Ed.2d lx.

Central to the trustee's objection to the USNB claim is Section 57(d) of the Act, 11 U.S.C. (1976 ed.) § 93(d), which provides that:

"d. Claims which have been duly proved shall be allowed upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest or unless their consideration be continued for cause by the court upon its own motion: Provided, however, *That an unliquidated or contingent claim shall not be allowed unless liquidated or the amount thereof estimated* in the manner and within the time directed by the court; and such claim *shall not be allowed if the court shall determine that it is not capable of liquidation or of reasonable estimation* or that such liquidation or estimation would unduly delay the administration of the estate or any proceeding under this Act." (emphasis added)

The basis for the claim is that the bankrupt sold securities pledged to USNB but did not deliver the proceeds to the claimant but to someone else. The trustee presses three separate theories in support of his objection that the USNB claim may not share in the distribution of the bankrupt's assets.

His first argument for disallowance is that the claim is within the proviso to Section 57(d) in that it is so contingent and unliquidated as to be incapable of liquidation within the contemplation of the section.

Given the spirit of the Bankruptcy Act to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes."

*Williams v. U. S. Fidelity Co.*, 236 U.S. 549, 554, 35 S.Ct. 259, 290, 59 L.Ed. 713 (1914), contingent debts were among those provable, i. e., they could be asserted against the assets of the estate. Section 63(a)(8), 11 U.S.C. (1976 ed.) § 103(a)(8). As a provable debt, contingent claims would be within the bankrupt's discharge as is clear from the lead-in sentence of Section 17(a), 11 U.S.C. (1976 ed.) § 35(a) regardless of whether such claims were allowable, i. e., they were permitted to share in the assets. While Section 57(d)'s proviso rendered some contingent claims ineligible to share, Section 63(d) rendered such claims non-provable. See *Matter of Cartridge Television, Inc.*, 535 F.2d 1388, 1390 (2d Cir. 1976). As non-provable claims would survive discharge and thereby cut against the grain of the spirit of the Act to give the bankrupt a fresh start, courts felt some reluctance to expand the proviso in Section 57(d) beyond what was truly found within its words. See, e. g., *Maynard v. Elliott*, 283 U.S. 273, 278, 51 S.Ct. 390, 392, 75 L.Ed. 1028 (1930). The court finds that the claim here can be

---

1. The petition was filed under Chapter XI of the 1898 Act, Sections 301 *et seq.*, 11 U.S.C. (1976 ed.) §§ 701 *et seq.*, in 1974. The Chapter XI aborted two months later and bankruptcy administration followed. This dispute is, there-fore, governed by the provisions of the 1898 Act, Section 403(a) of Title IV of the 1978 bankruptcy legislation, Pub.L. No. 95–598, 92 Stat. 2549, 2683.

calculated as both the unpaid balance and the selling price of the securities are readily ascertainable.

The trustee's second objection to the USNB claim is that backup information is needed. The trustee has had ample opportunity to resort to several modes of discovery to secure what is necessary. But on its face, the claim stands prima facie. Section 57(a), 11 U.S.C. (1976 ed.) § 93(a) and Rule 301(a), 411 U.S. 1042, 93 S.Ct. 3128, 37 L.Ed.2d liv.

The trustee's last objection is that this claim is based on entitlement to money damages for conversion or other intentional torts by the bankrupt and/or its officers and therefore is neither provable nor allowable within *Schall v. Camora*, 251 U.S 239, 251, 40 S.Ct. 135, 137, 64 L.Ed. 247 (1910). See 3A *Collier on Bankruptcy* (14th ed.) ¶ 63.25.

But the statutory scheme decreeing that non-provable claims would survive the discharge yielded no hidden treasure to the creditor from the corporate shell and courts began to look for implied contracts underlying tort claims for such were provable under Section 63(a)(4) of the Act. The District Court here said it this way in *In re Paramount Publix Corp.*, 8 F.Supp. 644, 645 (1934):

> "The cases comprised in . . . [an implied contract] are those where the bankrupt by means of a tort or wrongful act has obtained something of value for which an equivalent price should be paid and on account of which the law will imply a promise to pay. In such instances there is, of course, no real contract on the part of the wrongdoer to pay, but there is a fictitious contract forced on him by the law to pay over the amount of his unjust enrichment."

See also *Matter of Universal Research Laboratories, Inc.*, 627 F.2d 803 (7th Cir. 1980), for a recent approval of this theory.

But it is clear on the facts here that the bankrupt derived no benefit from its failure to follow the instructions it had as to the proceeds. In short, the bankrupt was not enriched and USNB's reliance on *SEC v. C.*

*H. Wagner & Co., Inc.*, 373 F.Supp. 1214 (D.C.Mass.1974), is misplaced for there the bankrupt securities broker received the funds from its customers albeit in a different form. Nor does the basis for the claim of USNB rest on an act by the bankrupt denounced by a statute thereby creating the liability as in *Brown v. O'Keefe*, 300 U.S. 598, 57 S.Ct. 543, 81 L.Ed. 827 (1937), or *Safeway Portland Employees' Federal Credit Union v. C. H. Wagner & Co., Inc.*, 335 F.Supp. 116 (D.C.Or.1971).

In the dispute here, the bankrupt's acts were tortious and this court perceives no basis to convert the non-provable status of the claim attendant on those acts to a provable claim on some implied contract theory. In the relationships of people, even the right not to be struck by a negligently operated automobile could be said to rest in an implied contract that pedestrians will not be injured by bad drivers.

This kind of reasoning would distort Congress' scheme in Section 63(a) of the Act enumerating provable claims and the gloss given the statute by the cases holding tort claims to be non-provable.

The trustee's objection is sustained and the claim should be stricken. Submit an order.