SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff-Appellee,

v.

G. WEEKS SECURITIES, INC.; G. Weeks Co., Inc.; Gerald D. Weeks; C. M. Hodge; John Kilpatrick; Patrick Michael and Randy Vallen, Defendants-Appellants.

Nos. 80-1013, 80-1145.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 5, 1980.
Decided May 19, 1982.

Robert L. Kassel, Philip R. Brookmeyer, Anthony V. Labozzetta, New York City, N. Y., for defendants-appellants in both cases.

Bruce S. Kramer, David J. Cocke and Daniel B. Hatzenbuehler, Rosenfield, Borod & Kremer, Memphis, Tenn., for amicus curiae, Scott and Craig.

Steven J. Gard, Securities and Exchange Comn., Atlanta, Ga., John P. Sweeney, Harlan W. Penn, Paul Gonson, Ann Flannery, Washington, D. C., for plaintiff-appellee.

Before MARTIN, Circuit Judge, WEICK,* Senior Circuit Judge, and COOK,** District Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

This consolidated appeal challenges two preliminary injunctions issued against appellant G. Weeks Securities, Inc. and others. On December 5, 1979, the District Court preliminarily enjoined appellants from further violating the anti-fraud provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934.[1] By separate order issued January 29, 1980, 483 F.Supp. 1239, the court expanded the injunction to prohibit violations of the registration provisions of the 1933 Act.[2] This interlocutory appeal followed.

G. Weeks Securities, Inc. is a Delaware corporation registered with the state of Tennessee as a government securities dealer. G. Weeks Company is a municipal securities dealer registered with the Securities and Exchange Commission as a broker-dealer under Section 15(b) of the 1934 Act, 15 U.S.C. § 78o (b). The individual appellants are employees or former employees of these companies.

On October 26, 1979, the SEC brought civil enforcement proceedings against appellants, alleging that appellants were selling securities in violation of the anti-fraud and registration provisions of the securities laws. The substance of the SEC's charge is not at issue here and may be stated briefly. G. Weeks Securities and its agents were selling "standby with pair-off" contracts requiring the simultaneous purchase and sale for forward delivery of Government National Mortgage Association certificates. GNMAs are mortgage-backed certificates typically issued by mortgage bankers. The certificates are backed by the full faith and credit of the federal government and are specifically exempted from the registration provisions of the securities laws. 15 U.S.C. § 77c(a)(2). The SEC contended that G. Weeks Securities misrepresented to investors the nature of the standby transactions by telling them that: (1) the contracts involved purchases of GNMAs themselves; (2) the GNMAs would serve as collateral for all monies invested; (3) the full faith and credit of the U. S. Government guaranteed the investment; and (4) the GNMA certificates would be held in various banks. According to the SEC, the standbys were actually unsecured loans to G. Weeks Securities. The SEC also contended that the standby contracts were securities which should have been registered. Finally, the SEC alleged that G. Weeks Securities sold these securities while insolvent, concealing its precarious financial condition from investors. The

* Circuit Judge Weick retired from active service under the provisions of 28 U.S.C. § 371(b) on December 31, 1981, and became a Senior Circuit Judge.

** Honorable Julian Abele Cook, Jr., District Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

1. 15 U.S.C. § 77q(a); 15 U.S.C. § 78j(b) and accompanying Rule 10(b)–5, 17 C.F.R. 240.10b–5.

2. 15 U.S.C. § 77e(a); (c).

SEC requested the District Court to order an accounting and to appoint a receiver for G. Weeks Securities.

The parties have treated this appeal as if it were from a final judgment on the merits. Although the underlying issues in this case are complex, the immediate problem is not. Our sole concern is whether the District Court abused its discretion in issuing the two preliminary injunctions. *SEC v. Senex Corp.*, 534 F.2d 1240 (6th Cir. 1976).

Appellants contend that the District Court abused its discretion by issuing the injunctions before allowing them to present "live" testimony. Specifically, appellants complain that they did not receive adequate notice and a fair hearing under Federal Rule of Civil Procedure 65 because their witnesses were not heard in rebuttal to the SEC's *prima facie* case. That case was established by the testimony of numerous SEC witnesses in the course of six hearings held prior to the issuance of the injunctions.

We agree in part with this argument. The anti-fraud injunction turned on disputed factual questions concerning whether appellants misrepresented the true nature of the standby with pair-off and whether G. Weeks Securities was insolvent at the time it sold these contracts. Rule 65 requires a hearing before a preliminary injunction may issue. A hearing implies the opportunity to be heard and to present evidence. *Detroit & Toledo Shore Line R. Co. v. Broth'd of Local F. & E.*, 357 F.2d 152 (6th Cir. 1960). Observance of the Rule's hearing requirement is particularly important where the facts are disputed:

> "But if the allegations of a complaint are denied by a defendant, [as was true in this case] he is entitled to a hearing, which includes the right to offer evidence in support of his factual claims * * * A hearing embodies the right to be heard on the controverted facts, as well as upon the law." (citations omitted).

*Id.* at 153–154, *quoting Carpenter's Dist. Council v. Cicci*, 261 F.2d 5, 8 (6th Cir. 1958).

We hold that the District Court abused its discretion by resolving disputed factual questions in favor of the SEC without first hearing the appellants' live testimony. Accordingly, that injunction is reversed and remanded so that the District Court can hold a hearing at which appellants may offer their version of the disputed facts.

We turn now to the registration injunction. We believe that order properly issued because the District Court had before it adequate documentary evidence upon which to base an informed, albeit *preliminary* conclusion that the standby with pair-off contracts were securities subject to registration. Where the resolution of the questions to be considered in issuing a preliminary injunction turns on legal rather than factual conclusions, the taking of oral testimony by both sides is not a prerequisite to a fair hearing. *SEC v. Frank*, 388 F.2d 486 (2d Cir. 1968).

Appellants, in the documentary evidence and briefs they submitted both to the District Court and this court, vigorously deny representing to the investing public that the standby with pair-off involved the actual purchase of GNMAs or that the transaction was somehow backed or collateralized by government securities. Instead, they maintain that the transaction involved only forward contracts for the future purchase and sale of GNMAs. At least one court has held that such contracts enjoy the same exemptions as GNMAs purchased on the cash market. *See Bache Halsey Stuart, Inc. v. Affiliated Mortgage Investments*, 445 F.Supp. 644 (N.D.Ga.1977). On the basis of this authority, appellants argue that the standby with pair-off, like other forward GNMA contracts, need not be registered. However, an analysis of the documentary evidence submitted to the District Court does not, as a matter of law, permit such a conclusion.

The following example, provided by appellants themselves, illustrates how the standby with pair-off operated:

(a) GWS agrees to sell a GNMA bond to customer A for settlement in 120 days at a price of $95. The current market price is $95.

(b) Simultaneously, customer A agrees to sell to GWS a GNMA bond on a standby basis for settlement in 120 days at a price of $101. "Standby basis" means that the customer need not sell to defendant, but may sell to outside investors if the price of the bond rises above $101.

(c) Customer A pays a commitment fee of $5.15 to GWS.

(d) If, in 120 days, the price of the bond is below $101, customer A will elect to deliver the bond to GWS. Because both parties have simultaneous obligations to buy and sell, no actual exchange takes place. GWS makes a $6 payment to customer A, which represents a return of the commitment fee, plus stated interest.

(e) If the market price in 120 days is higher than $101, customer A may purchase the bond from defendant and sell it on the open market.

■ This scheme guaranteed the investor a positive return on his money. If the market fell, G. Weeks Securities would nevertheless return the standby commitment fee plus a stated amount of interest. Conversely, if it rose, at least the same amount would be returned and if the increase in price was large enough, above 101 in the example, the investor would reap an additional return in the form of profits taken on the cash market from the sale of the GNMA on which he accepted delivery. This aspect of the standby with pair-off, the guaranteed return, distinguishes this transaction from more conventional forward contracts and places the scheme within the realm of investment contracts subject to registration.

Forward contracts are agreements to sell a commodity, here GNMAs, at a fixed date in the future for a price determined at the time the contract is written. The securities are not paid for until the future settlement date. These contracts are generally available in one of two forms: (a) firm commitment or (b) standby. A firm commitment contract offers the buyer the opportunity to purchase a commodity at some point in the future at or near current prices. Buyer and seller reverse the risks of price fluctuations that they would normally carry. That is, if the price should rise between the execution and settlement dates, the return flows not to the seller but to the buyer because he has locked himself into a lower purchase price. A decline in prices produces the opposite result. In either event, the sale will be transacted on the settlement date and both parties will then realize their respective gains or losses.

A standby contract, on the other hand, allows the holder of a commodity to contract away the risk that prices will fall. For a nonrefundable fee, the seller of the standby will agree to purchase the commodity at some point in the future for a set price. If on the settlement date, the market price is below the established "strike" price, the purchaser of the standby will sell the commodity to the standby seller for the strike price. However, if market prices at that time range above the strike price, the buyer will not exercise the standby but will sell his commodity on the open cash market.

From a securities law standpoint, the key element in both instances is that the only additional risks presented by a forward, as opposed to a cash, contract are those of price movements during the executory period. Because prices are determined by competitive market forces, registration of forward contracts could provide no data about the seller which would be relevant to those market risks. The gain or loss stems from the impersonal marketplace alone. It is not the product of a commercial endeavor. Hence, under these circumstances, a forward contract does not meet the law's test of a security subject to registration as "an investment of money in a common enterprise with profits to come solely from the efforts of others." *Securities and Exchange Commission v. W. J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1945).

Appellants' scheme, the standby with pair-off, offered an inducement available under neither form of the traditional forward contract, a guaranteed return. Un-

like firm commitment or standby forward contracts, the contract sold by G. Weeks Securities was to be a "no lose" proposition for the investor. Upon entering a standby with pair-off, the investor would receive the following document from G. Weeks Securities:

> "This document will serve as your written guarantee from G. Weeks Securities, Inc. that your investment of $_____ for \_\_\_\_ months will accrue interest during the \_\_\_\_ month period in the amount of $\_\_\_\_\_.
>
> "The annual rate of return on your investment will be \_\_\_\_%. This means that in _____ of '79, you shall receive from G. Weeks Securities, Inc., a check in the amount of $\_\_\_\_\_."

The payment of this "interest", unrelated as it was to the risks of the marketplace, was entirely dependent upon the investment skills of G. Weeks Securities. That conclusion is inescapable in light of the structure of the standby with pair-off as appellants themselves explained it. G. Weeks Securities could accept the risk of adverse price fluctuations and guarantee a positive return only if they successfully invested the commitment fees deposited by investors. Thus, the standby with pair-off would appear to fit precisely the Supreme Court's definition of a security as an investment contract. *See W. J. Howey Co., supra.* In the alternative, the District Court might have concluded that appellants' standby contract, together with the guarantee letter reprinted above, constituted an "evidence of indebtedness" and so met the test of a security under Section 2(1) of the Securities Act, 15 U.S.C. § 77b(1).

In any event, the proper label need not be permanently affixed here; that function may be undertaken at the trial of this case on the merits. In the context of a preliminary injunction, the court's discretion should be guided by asking whether the party seeking the injunction has shown a substantial likelihood of success on the merits. *Mason County Medical Assn. v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977). The documentary evidence before the District Court easily allowed the SEC to meet that standard on the registration issue. We affirm the District Court's order enjoining appellants from further violating the registration provisions of the Securities Act, 15 U.S.C. § 77e(a); 77e(c).

In conclusion, we note that our decision today in no way applies to conventional forward contracts. The securities law question decided here turned on the particular facts of this case alone. We have found only that on the basis of the undisputed facts before the District Court, that court could, as a matter of law, preliminarily determine that the contract sold by appellants was a security subject to registration. Furthermore, because that conclusion turned on disputed legal· questions alone, that particular injunction could and properly did issue before appellants' witnesses were heard by the District Court. *SEC v. Frank, supra.*

Reversed in part and affirmed in part. Remanded for proceedings consistent with this opinion.